FILED IN
COURT OF CRIMINAL APPEALS

JANUARY 16, 2015

ABEL ACOSTA, CLERK

PD-1646-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/15/2015 4:58:13 PM
Accepted 1/16/2015 1:44:16 PM
ABEL ACOSTA
CLERK

*Oral argument requested*

**PD-1646-14**

### IN THE TEXAS COURT OF CRIMINAL APPEALS

---

# DEON REESE EVANS
*APPELLANT*

vs.

# THE STATE OF TEXAS
*APPELLEE*

---

FROM THE FIFTH COURT OF APPEALS
CAUSE NO. 05-13-00627-CR

APPEAL FROM THE 291ST JUDICIAL DISTRICT COURT
OF DALLAS COUNTY, CAUSE NO. F12-28191-U,
THE HONORABLE SUSAN HAWK PRESIDING

---

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

BRUCE ANTON
State Bar No. 01274700
ba@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

## Ground for Review

Whether the affidavits supporting Evans's arrest warrant and search warrant established probable cause to believe Evans murdered his mother, and that his DNA contained evidence of as much, respectively.

# Table of Contents

Ground for Review ................................................................................ 2

Index of Authorities ............................................................................. 4

Identity of Parties and Counsel .......................................................... 5

Statement Regarding Oral Argument ................................................. 6

Statement of the Case and Procedural History ................................. 7

Argument .............................................................................................. 9

    The affidavits supporting Evans's arrest warrant and search warrant
    did not establish probable cause to believe Evans murdered his
    mother, and that his DNA contained evidence of as much,
    respectively ......................................................................................... 9

        I.   The information provided in the affidavits ................................ 9

        II.  What warrants a warrant ......................................................... 11

        III. The information in the affidavits provided no more than a
        hunch ........................................................................................ 13

Prayer ................................................................................................. 19

Certificate of Service ......................................................................... 20

Certificate of Compliance .................................................................. 20

Appendix ............................................................................................. 21

# Index of Authorities

**Cases**

*Bell v. State*, 724 S.W.2d 780, 787-91 (Tex. Crim. App. 1986) ............... 19

*Brooks v. State*, 76 S.W.3d 426, 431 (Tex. App. Houston [14th Dist.] 2002, no pet.) ................................................................................ 12

*Earhart v. State*, 823 S.W.2d 607, 631 (Tex. Crim. App. 1991) ............. 15

*Evans v. State*, No. 05-13-00627-CR, 2014 WL 6450278, *1 (Tex. App.— Dallas 2014) .............................................................................. 8, 16, 17

*Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) ................ 12

*Gibbs v. State*, 819 S.W.2d 821, 830–31 (Tex. Crim. App. 1991) ........... 16

*Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004) ..... passim

*Hoag v. State*, 728 S.W.2d 375, 378-80 (Tex. Crim. App. 1987) ............. 18

*Illinois v. Gates*, 462 U.S. 213, 239 n. 11 (1983) .................................... 12

*Jones v. State*, 833 S.W.2d 118, 123-24 (Tex. Crim. App. 1992) ............ 11

*Parker v. State*, 206 S.W.3d 593, 596-97 (Tex. Crim. App. 2006) ...... 9, 13

*State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) ............... 12

*State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011) ............. 12

*Torres v. State,* 182 S.W.3d 899, 902 (Tex. Crim. App. 2005) ................ 13

*United States v. Sokolow*, 490 U.S. 1, 7 (1989) ...................................... 16

*Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 564–66 (1971) ...................................................................................... 12

*Wong Sun v. United States*, 371 U.S. 471, 479 (1963) ..................... 12, 18

**Statutes**

TEX. CODE CRIM. PROC. art. 18.01(b) .................................................... 12

TEX. PEN. CODE §19.02 ........................................................................... 8

## Identity of Parties and Counsel

For Appellant Deon Reese Evans:

B. WARD MAEDGEN
    *Trial counsel of record*
14135 Midway Road, Suite 250
Dallas, Texas 75244

BRUCE ANTON
BRETT E. ORDIWAY
    *Appellate counsel of record*
SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201

For Appellee the State of Texas:

BRANDON T. BIRMINGHAM
JEFF MATOVICH
    *Trial counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
133 N. Riverside Drive
Dallas, Texas 75027

LISA SMITH
    *Appellate counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

## Statement Regarding Oral Argument

Evans believes oral argument will be helpful to this Court's understanding of the Dallas Court of Appeals's error.

## Statement of the Case and Procedural History

Evans suffered from mental illness. (RR4: 66-67). Because of this, he had a poor relationship with his parents, both because he blamed his contraction of scabies on them, and because, "things [having] boiled over," they had cast him out onto the streets. (RR4: 38; RR5: 180, 184-88, 215, 227).

On Sunday, April 1, 2012, Evans arrived unannounced at his mother's church and told her he wished to retrieve some belongings from her home. (RR4: 39-41). A friend of his mother's was troubled by Evans's conduct and appearance, and arranged to check on his mother periodically throughout the afternoon. (RR4: 46-47, 62-63).

Evans's mother quit answering her phone shortly thereafter. (RR4: 48-51). Her friend called 9-1-1 at approximately 3:30 p.m., and police soon found Evans's mother deceased in her home. (RR4: 72-75, 133). A belt was wrapped around her neck, and there were no signs of forced entry. (RR4: 75, 153).

The police then applied for, and received, an arrest warrant for Evans and a search warrant for his DNA sample. Upon their execution, the police learned that a pair of sunglasses similar to those worn by Ev-

ans were found underneath his mother's body, a shoe print on her arm matched those Evans wore, and DNA samples taken from the belt and other items matched Evans. (RR4: 94, 119, 168; RR5: 81-82, 85-87, 89-93, 196).

Evans was then indicted for murder. *See* TEX. PEN. CODE §19.02. After failing in his attempt to suppress evidence stemming from his arrest, including the DNA sample taken incident to that arrest, he pleaded not guilty but, after a six-day trial, was convicted. (CR: 48-52; RR2: 7, 44-45; RR6: 65). At the subsequent punishment phase of Evans's trial, additional evidence as to his mental illness was introduced, as well as evidence of his previous convictions, all committed after his mental health problems began. (RR6: 75-76). On this evidence, the jury assessed a 99-year imprisonment sentence. (RR7: 36).

Evans appealed his conviction on two grounds. *See Evans v. State*, No. 05-13-00627-CR, 2014 WL 6450278, *1 (Tex. App.—Dallas 2014). The Fifth Court of Appeals rejected each, though, and affirmed his conviction, and no motion for rehearing was filed. *Id.*

## Argument

> The affidavits supporting Evans's arrest warrant and search warrant did not establish probable cause to believe Evans murdered his mother, and that his DNA contained evidence of as much, respectively.

◆　◆　◆

Though the police certainly had cause to investigate Evans—he was with the complainant in her home shortly before her murder, and they shared a contentious personal history—these facts did not point to him "like a beacon." *See Parker v. State*, 206 S.W.3d 593, 596-97 (Tex. Crim. App. 2006) ("Probable cause to arrest must point like a beacon toward the specific person being arrested.")). At best, the affidavits supported nothing more than a suspicion or a hunch on the part of the officers that Evans had committed the offense. (Br. at 16). The trial court erred in determining otherwise, and then the court of appeals did, too, as revealed by its strained mischaracterization of the evidence as tying Evan "directly" to the complainant's murder.

## I.    The information provided in the affidavits

The affidavit in support of Evans's arrest stated the affiant believed that Evans "did then and there intentionally and knowingly cause the death of [the complainant] by strangulation" because, in total:

> On 4–1–12 at approximately 3:51 pm Officers were dispatched to 1216 Blanco Circle on a concern for well fare call. Officers were told by the caller Marylin Acres that Resident Desni Bowie–Green was not responding to her phone or text messages and she was not answering her door. Desni's car was at the location. The caller reported that Desni was having problems with her grown son Deon Reese Evans who had been violent to her in the past. The caller told police she was concerned something had happened to Desni while her son was there and now she was not able to get Desni to the door. Officers made entry into the house and found Desni was inside the location deceased from apparent strangulation.
>
> Detectives Worsham and Landis were notified and arrived on scene. Marylin Acres stated to the officers and Detectives that she had been with Desni at church earlier in the day and her son Deon was there with her. When church was over Deon got in the car with Desni. Marylin stated she asked Desni if everything was all right and if she wanted her to come to her house with her. According to Marylin, Desni stated no that she would be fine because she was just taking him (Deon) to the house to get the rest of his things.
> Marylin stated to Detectives that because of the violence in the past with Deon she and Desni agreed Marylin would call her on the half hour to check and make sure she was ok. Marylin told the officers she called Desni at 1:24 pm and Desni answered and said she was just pulling up at her house and Deon was in the front passenger seat of the car. At that point Marylin stated to the officers Desni seemed fine but at the 2 o'clock call Desni did not answer. Detective Landis was told by Marylin that Desni is divorced and lives by herself since she kicked Deon out of the house in January

10

of 2012 because he would not take his bi-polar medication. There was no forced entry.

(RR8: PT6). The search warrant affidavit also included the following statements:

> Officers retrieved the keys and used them to unlock the front door of the residence and make entry. Officers located the complainant lying in the hallway by the kitchen with a black belt wrapped around her neck . . . .

> Detective Worsham responded to the offense location and interviewed family and friends of the complainant who told [him] Deon Evans had assaulted the complainant in the past and had choked her on Easter of 2011. Detective Worsham also learned that the complainant lived at this location alone since kicking Deon out of the house in January 2012. Detective Worsham learned that Deon Evans was the last person known to be with the complainant and has assaulted and choked her in the past . . . . Detective Worsham requests a search warrant be issued for a sample of Deon Evans's saliva/DNA to be compared to evidence collected at the offense location.

(RR8: PT4). Nothing more.

## II.  What warrants a warrant

A search warrant may not issue unless sufficient facts are presented through a sworn affidavit to satisfy the issuing magistrate that probable cause exists for its issuance. TEX. CODE CRIM. PROC. art. 18.01(b); *Jones v. State*, 833 S.W.2d 118, 123-24 (Tex. Crim. App. 1992). "Arrests generally must be supported by the same level of probable

11

cause." *See Brooks v. State*, 76 S.W.3d 426, 431 (Tex. App. Houston [14th Dist.] 2002, no pet.) (citing *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 564-66 (1971)). Probable cause exists when there are sufficient facts within the four corners of the affidavit which, coupled with inferences from those facts, and under the totality of the circumstances, establish a fair probability that contraband or evidence of a crime will be found at the specified location at the time the warrant is issued. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012); *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010); *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004). Probable cause is a "flexible and non-demanding standard." *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011).

Ordinarily, prior case law is not especially helpful in making this determination. This is because "[t]here are so many variables in the probable cause equation that one determination will seldom be a useful 'precedent' for another." *Illinois v. Gates*, 462 U.S. 213, 239 n. 11 (1983). It remains, though, that "[i]t is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion." *Wong Sun v. United States*, 371 U.S. 471, 479 (1963). An unarticulated hunch,

suspicion, or even the good faith of the arresting officer is insufficient to support probable cause to justify a warrantless arrest. *Torres v. State,* 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). Probable cause to arrest must "point like a beacon toward the specific person being arrested." *Parker v. State*, 206 S.W.3d 593, 596-97 (Tex. Crim. App. 2006).

III. **The information in the affidavits provided no more than a hunch**

In Evans's opening brief on appeal, he argued in his first ground that the trial court abused its discretion in denying his motion to suppress evidence obtained as a result of his arrest and search because the affidavits in support of the warrants did not provide probable cause to believe he had murdered the complainant. Even when viewing the totality of the circumstances in the light most favorable to the trial court's ruling, the evidence does not support a finding of probable cause. Though, again, prior case law is not especially helpful in making this determination, Evans specifically pointed to this Court's opinion in *Hankins*, 132 S.W.3d at 388, as making clear that the information in the affidavits here was entirely insufficient to rise to the level of probable cause.

In that case, this Court—without dissent—rejected the trial court's finding of probable cause from affidavits providing far more evidence than the present case:

> The facts that can be derived from the four corners of appellant's arrest warrant affidavit are: (1) three dead bodies were discovered in a mobile home; (2) the victims were appellant's wife and her two children; (3) appellant had recently been released from jail and was living with the victims in the mobile home where the bodies were found; (4) appellant's wife's car was missing from the scene; (5) the victims were killed with a gun and appellant was in possession of a gun; (6) an unsigned note stating "I am guilty of murder, incest, hatred, fraud, theft, jealously [sic], and envy" was found inside the mobile home on an envelope addressed to appellant; (7) appellant had previously assaulted another woman; (8) appellant's wife's car was parked outside of his girlfriend's apartment; (9) at 2 a.m., appellant asked his girlfriend to check to see if there was anything unusual outside of her apartment; and (10) when approached by officers outside of her apartment, appellant's girlfriend told the officers that appellant was inside her apartment, that he was armed with a pistol and had access to a rifle and another pistol, that he had been staying with her for several days, and that he had been driving his wife's car.

*Id.* at 388-89. The affidavits showed not only that the appellant had opportunity and motive, then, *but also* that a potential confession was found at the scene and the appellant had armed and barricaded himself. And yet, this Court held that:

> While these facts together might create suspicion, we agree with appellant that they do not add up to probable cause

14

that appellant committed the murders. There were no facts that would lead a neutral and detached magistrate to conclude that appellant was the perpetrator and not merely living with his wife and driving her car. There is nothing to show that the note was written by appellant. Even if the envelope on which the note was written was, as alleged, addressed to appellant, it was found at the crime scene where appellant was living. The note could have been written by anyone who picked up the envelope while inside the residence. None of the facts as alleged specifically tie appellant to the commission of the offense.

*Id.* at 389 (comparing *Earhart v. State*, 823 S.W.2d 607, 631 (Tex. Crim. App. 1991) (holding that arrest warrant affidavit was sufficient to establish probable cause where it alleged that the child victim had disappeared, that defendant encountered the victim about a week before her disappearance at which time defendant "paid a lot of attention" to her, that defendant was seen by several people in the victim's neighborhood on the day she disappeared, that defendant specifically asked a neighbor when the victim's family was expected home on the date of her disappearance, that a car matching the description of defendant's car was seen at the victim's home, that the victim was seen talking to the car's occupant on the afternoon of her disappearance, and that defendant left town within two days of the victim's disappearance), *vacated on other grounds*, 509 U.S. 917 (1993); *Gibbs v. State*, 819 S.W.2d 821, 830–31

15

(Tex. Crim. App. 1991) (concluding that the arrest warrant affidavit established probable cause where it alleged facts demonstrating that defendant was in proximity of the location of the crime when the crime was committed, that defendant wore boots early in the evening on the night of the offense, but left for a while and was not wearing the boots when he returned, that these same boots were stained with human blood when they were recovered from defendant's apartment at the complex where the crime was committed, that defendant concocted a series of lies to divert the attention of police away from himself and the commission of the crime, and that property stolen from the victim was recovered from defendant's possession)). Indeed, a mere "hunch" does not even create "reasonable suspicion," which is "obviously less demanding than that for probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

The Dallas Court of Appeals dismissed Evans's argument because it determined that, in *Hankins*, "none of the facts in the . . . affidavit *specifically* tied Hankins to the murders," while "the affidavits here allege facts that tie [Evans] *directly* to the murder." *Evans*, 2014 WL 6450278 at *4 (emphasis added). And it was right to seize on that factor

16

as the crucial one—specific, direct evidence as establishing probable cause. *Hankins*, 132 S.W.3d at 389 ("None of the facts as alleged specifically tie appellant to the commission of the offense."). But the Dallas court was simply wrong when it characterized the Evans affidavits as containing as much.

The court identified the following evidence as tying Evans "directly to the murder":

- "a history of violence between" Evans and the complainant

- "a source of recent animosity between" Evans and the complainant

- Evans "had a mental disorder and was not taking his medication to control it"

- Evans was "at the scene within the timeframe of the murder"

- Evans "was the last person seen with [the complainant] while she was alive"

- "there was no forced entry, which suggests that it was unlikely that anyone other than appellant committed the crime"

*Evans*, 2014 WL 6450278, at *4. That's it. And none of this ties Evans directly to the murder; certainly not that he was merely at the crime scene. *See Jones*, 833 S.W.2d at 124 (that defendant's fingerprints were

17

found at murder scene was insufficient to establish probable cause that the defendant committed the murder; it merely supported a finding that the defendant was present at some point at the crime scene); *Hoag v. State*, 728 S.W.2d 375, 378-80 (Tex. Crim. App. 1987) (no probable cause to arrest burglary suspect who was observed walking suspiciously around houses and into two apartment complexes *and* who had criminal history for burglary).

As Evans pleaded with the court of appeals, and as the—despite the court's resistance—analogous *Hankins* opinion makes clear, the evidence included in the affidavits in this case provides for suspicion, nothing more. And though, accordingly, "the police certainly had cause to investigate Evans based on the information available to them at the time . . . gut feelings are insufficient to support probable cause to arrest or search." (Br. at 16).

The trial court abused its discretion by denying Evans's motion to suppress and by admitting the "immediate fruits" of the arrest and search—his DNA, his shoes, his statements to the police at those times—into evidence at trial. (CR: 49); *see, e.g., Wong Sun*, 371 U.S. at 484-85 (holding that both direct and indirect products of unlawful

18

searches generally must be excluded); *Bell v. State*, 724 S.W.2d 780, 787-91 (Tex. Crim. App. 1986) (applying attenuation of the taint analysis and concluding that the "immediate fruits" of the illegal arrest should have been suppressed). And the court of appeals was wrong to approve as much.

## **Prayer**

For these reasons, Evans respectfully requests this Court to grant this petition so that it may reverse the court of appeals's ruling and remand this case to that court for a harm analysis.

Respectfully submitted,

/s/ Bruce Anton

BRUCE ANTON
Bar Card No. 01274700
ba@sualaw.com

/s/ Brett Ordiway

BRETT ORDIWAY
Bar Card No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Attorneys for Appellant*

19

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was served to the Dallas County District Attorney's Office and the State Prosecuting Attorney via U.S. Mail on January 15, 2015.


        /s/ Bruce Anton
BRUCE ANTON




## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this petition contains 2, 411 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century Schoolbook.


        /s/ Bruce Anton
BRUCE ANTON

# **<u>Appendix</u>**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00627-CR

**DEON REESE EVANS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1228191-U**

## OPINION

Before Justices FitzGerald, Fillmore, and Stoddart
Opinion by Justice FitzGerald

A jury found appellant guilty of the murder of his mother and sentenced him to ninety-nine years' imprisonment. In two issues on appeal, appellant asserts the trial court erred in denying his motion to suppress evidence seized pursuant to search and arrest warrants that were not supported by probable cause and erred in admitting evidence of an extraneous offense. We affirm the trial court's judgment.

### BACKGROUND

Appellant suffers from mental illness, and during the time frame at issue refused to take his medication. His mother, Desni Bowie-Green, insisted that appellant take his medication if he continued to live with her. Appellant refused, so Desni repeatedly kicked appellant out of her home. She would later relent and allow him to return.

A year before Desni's death, appellant assaulted her by choking her. The assault ended when appellant's grandmother intervened. Afterwards, Desni kicked appellant out of the house, but later allowed him to return.

Two months before the murder, Desni kicked appellant out of the house again. On April 1, 2012, appellant showed up at the church his mother attended. Appellant requested that he be allowed to remove some of his belongings from Desni's home after the service. Desni agreed.

Desni's friend, Marilyn Akers, expressed concern about appellant's accompanying Desni to her home. To alleviate these concerns, Desni and Akers agreed to stay in touch by phone.

When Akers first contacted Desni, Desni told her that she was at her home with appellant. Akers said that she would phone again in an hour. When Akers called an hour later, Desni did not answer the phone. Akers called and texted a few more times, but Desni did not reply. Akers and her husband then went to Desni's house to check on her. No one answered the door, but Desni's car was parked outside with the windows rolled down. Desni's phone and keys were lying on the passenger seat of the car.

Akers contacted the police and Desni's mother. When the police arrived, they found no signs of forced entry. The police entered the home using Desni's keys, and found Desni's body on the kitchen floor. A leather belt was wrapped around Desni's neck and there were shoe prints on her lower arms. Sunglasses were found underneath Desni's body. The medical examiner determined that the cause of death was strangulation.

The police obtained a warrant for appellant's arrest. After the arrest, the police obtained a search warrant to obtain a sample of appellant's DNA. Appellant filed a motion to suppress the clothing he was wearing at the time of his arrest and the DNA sample. The trial court denied the motion.

At trial, the DNA testing linked the sunglasses found under Desni's body to appellant. Appellant also could not be excluded as a contributor to the DNA found on the belt, Desni's shirt, and fingernail clippings from Desni's right hand. Both the medical examiner and a DPS trace analyst compared pictures of the imprints left on Desni's arms to appellant's shoes and concluded that appellant's shoes could have been the shoes that left the marks.

Appellant's grandmother testified about the choking incident that occurred a year before the murder. Defense counsel objected to the testimony, but the objection was overruled.

During the punishment phase of trial, the State presented evidence of appellant's prior convictions for evading arrest, criminal trespass, resisting arrest, battery, and unlawful restraint. Other testimony included that of psychologist Kristi Compton. Compton interviewed appellant and determined that he suffered from schizoaffective disorder, borderline intellectual functioning, and polysubstance abuse. But Compton stated that she saw no indication that appellant was delusional on the day of the murder, and could not say that he did not know the difference from right and wrong on that day.

The jury assessed punishment at ninety-nine years' imprisonment. Appellant timely perfected this appeal.

## ANALYSIS

### *Motion to suppress*

In his first issue, appellant argues the trial court erred in denying his motion to suppress the clothing and DNA evidence because the affidavits in support of both the search and arrest warrants were insufficient to establish probable cause.

The Fourth Amendment establishes a constitutional preference that a search be conducted pursuant to a warrant.[1] Under Texas law, no search warrant may issue without a sworn affidavit that sets forth facts sufficient to establish probable cause.[2] Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location at the time the warrant is issued.[3] Probable cause is a "flexible and non-demanding standard."[4]

Because of the constitutional preference for searches to be conducted pursuant to a warrant, we apply a highly deferential standard of review to a magistrate's probable-cause determination.[5] Under this highly deferential standard, we interpret the supporting affidavit in a commonsensical and realistic manner, and we defer to all reasonable inferences that the magistrate could have made.[6] We consider the totality of the circumstances and determine whether there are sufficient facts stated within the four corners of the affidavit, coupled with inferences from those facts, to establish a fair probability that evidence of a particular crime would be found at a given location.[7] As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable-cause

---

[1] *Jones v. State*, 364 S.W.3d 854, 856–57 (Tex. Crim. App. 2012) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)); *see* U.S. CONST. amend. IV.

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 1.06 (West 2005); *id*. art. 18.01(b), (c) (West Supp. 2013); *see also* TEX. CONST. art. I, § 9.

[3] *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).

[4] *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011).

[5] *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). The standard for reviewing a trial court's ruling on a motion to suppress that is based on a magistrate's probable-cause determination is different from the standard for reviewing a trial court's ruling on other motions to suppress: This Court normally reviews a trial court's ruling on a motion to suppress by using a bifurcated standard of review, where we give almost total deference to the historical facts found by the trial court and review de novo the trial court's application of the law. However, when the trial court is determining probable cause to support the issuance of a search warrant, there are no credibility determinations, rather the trial court is constrained to the four corners of the affidavit. Accordingly, when we review the magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search. *McLain*, 337 S.W.3d at 271.

[6] *McLain*, 337 S.W.3d at 271.

[7] *See Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

determination.[8] Although the reviewing court is not a "rubber stamp," "the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review."[9]

Likewise, an arrest warrant must also be supported by probable cause.[10] To establish probable cause, the evidence must show that "at the moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the . . . person had committed or was committing an offense."[11] As with a search warrant, the assessment of the sufficiency of an affidavit for an arrest warrant is limited to the four corners of the affidavit.[12]

The arrest warrant stated the affiant believed that appellant "did then and there intentionally and knowingly cause the death of Desni Bowie-Green by strangulation." The affidavit stated:

> On 4-1-12 at approximately 3:51 pm Officers were dispatched to 1216 Blanco Circle on a concern for well fare call. Officers were told by the caller Marylin Acres that Resident Desni Bowie-Green was not responding to her phone or text messages and she was not answering her door. Desni's car was at the location. The caller reported that Desni was having problems with her grown son Deon Reese Evans who had been violent to her in the past. The caller told police she was concerned something had happened to Desni while her son was there and now she was not able to get Desni to the door. Officers made entry into the house and found Desni was inside the location deceased from apparent strangulation.
>
> Detectives Worsham and Landis were notified and arrived on scene. Marylin Acres stated to the officers and Detectives that she had been with Desni at church earlier in the day and her son Deon was there with her. When church was over Deon got in the car with Desni. Marylin stated she asked Desni if everything was

---

[8] *Bonds*, 403 S.W.3d at 873; *see also Gates*, 462 U.S. at 238–39.

[9] *Jones*, 364 S.W.3d at 856–57.

[10] *See Brooks v. State*, 76 S.W.3d 426, 431 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

[11] *Parker v. State*, 206 S.W.3d 593, 596 (Tex. Crim. App. 2006).

[12] *See Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004).

all right and if she wanted her to come to her house with her. According to Marylin, Desni stated no that she would be fine because she was just taking him (Deon) to the house to get the rest of his things.

Marylin stated to Detectives that because of the violence in the past with Deon she and Desni agreed Marylin would call her on the half hour to check and make sure she was ok. Marylin told the officers she called Desni at 1:24 pm and Desni answered and said she was just pulling up at her house and Deon was in the front passenger seat of the car. At that point Marylin stated to the officers Desni seemed fine but at the 2 o'clock call Desni did not answer. Detective Landis was told by Marylin that Desni is divorced and lives by herself since she kicked Deon out of the house in January of 2012 because he would not take his bi-polar medication. There was no forced entry.

Although appellant does not distinguish between the affidavit supporting the arrest warrant and the affidavit supporting the search warrant, they are not identical. The search warrant orders that a DNA sample be obtained from appellant. The affidavit begins with a recitation of facts similar to the facts included in the arrest warrant. But the search warrant affidavit also includes the following statements:

Officers retrieved the keys and used them to unlock the front door of the residence and make entry. Officers located the complainant lying in the hallway by the kitchen with a black belt wrapped around her neck. . .

Detective Worsham responded to the offense location and interviewed family and friends of the complainant who told [him] Deon Evans had assaulted the complainant in the past and had choked her on Easter of 2011. Detective Worsham also learned that the complainant lived at this location alone since kicking Deon out of the house in January 2012. Detective Worsham learned that Deon Evans was the last person known to be with the complainant and has assaulted and choked her in the past . . . Detective Worsham requests a search warrant be issued for a sample of Deon Evans's saliva/DNA to be compared to evidence collected at the offense location.

Appellant asserts that while the police "certainly had cause to investigate" appellant because he was with the complainant shortly before her murder and they shared a contentious personal history, these facts did not point to appellant "like a beacon." In support of his argument

that the facts were insufficient to establish probable cause to support the warrants, appellant relies on *Hankins v. State*.[13] Appellant's reliance is misplaced.

In *Hankins*, the affidavit stated that: Hankins was married to one of the victims, that he was living with her in the mobile home park where the bodies were found, that Hankins had been driving his wife's car and the car was parked at his girlfriend's house where he had been staying for several days, that Hankins previously assaulted someone other than the victims, and that Hankins possessed a pistol and a rifle.[14] The affidavit also stated that a handwritten confession inside an envelope addressed to Hankins was found at the scene.[15]

Unlike the instant case, none of the facts in the *Hankins* affidavit specifically tied Hankins to the murders.[16] There was no information showing that Hankins had written the note or that tied Hankins's weapons to the murders.[17] As the court observed, there was no information from which the magistrate could conclude that Hankins was the murderer and not merely living with his wife and driving her car.[18]

Conversely, the affidavits here allege facts that tie appellant directly to the murder. The affidavits describe a history of violence between appellant and the victim, a source of recent animosity between them, and that appellant had a mental disorder and was not taking his medication to control it. The affidavits also recite facts that place appellant at the scene within the timeframe of the murder, and establish that appellant was the last person seen with Desni while she was alive. Specifically, the affidavits state that appellant was with Desni at the scene

---

[13] 132 S.W.3d 380, 389 (Tex. Crim. App. 2004).

[14] *Id*. at 388–89.

[15] *Id*. at 389.

[16] *See id.*

[17] *Id.*

[18] *Id.*

within thirty minutes to an hour before Akers lost contact with her, which was two and a half hours before her body was discovered by the police. The affidavits demonstrate that there was no forced entry, which suggests that it was unlikely that anyone other than appellant committed the crime. These facts are sufficient to establish probable cause. From these facts, the magistrate could reasonably conclude that a murder had been committed and there was a fair probability that appellant had committed it. Therefore, the trial court did not err in denying the motion to suppress. Appellant's first issue is overruled.

### *Extraneous Offense Testimony*

During the guilt/innocence stage of trial, the State called appellant's grandmother, Quilla Bowie, to testify about appellant's previous assault on his mother. Defense counsel objected.[19] The trial court initially sustained the objection, but the next day ruled that the testimony would be allowed. In his second issue, appellant argues the trial court erred in admitting evidence of an extraneous offense. Specifically, appellant complains the trial court should not have admitted his grandmother's testimony because any probative value the evidence may have had was substantially outweighed by its prejudicial effect.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard.[20] A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles.[21] When considering a trial court's decision to admit or exclude evidence, we will not reverse the ruling unless it falls outside the "zone of reasonable disagreement."[22]

---

[19] The objection was based on Rules 402, 403, and 404(b). *See* TEX. R. EVID. 402, 403, 404(b). Appellant relies solely on his rule 403 objection on appeal.

[20] *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006).

[21] *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

[22] *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

The rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial.[23] However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."[24] The opponent of the evidence must demonstrate that its negative attributes substantially outweigh any probative value.[25] "Probative value" means "the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence.[26] "Unfair prejudice" means a tendency to suggest a decision on an improper basis, such as hostility or sympathy.[27] Once Rule 403 is invoked, the trial court must engage in a balancing test, considering the following factors: (1) the inherent probative force of the proffered item of evidence, along with (2) the proponent's need for that evidence, against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.[28] The language of Rule 403 stating that evidence " may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"

---

[23] *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996).

[24] TEX. R. EVID. 403

[25] *Montgomery*, 810 S.W.2d at 377.

[26] *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

[27] *Id.* at 879–80.

[28] *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

means that trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence.[29]

Appellant insists the testimony should have been excluded because identity was the only fact at issue and the prior assault was not probative of this fact because it was dissimilar to the murder. Appellant further asserts the evidence was unnecessary because the State had other evidence to establish the relationship between appellant and his mother. According to appellant, the evidence had the potential to impress the jury "in some irrational but nevertheless indelible way."

Bowie testified that she lived near Desni, and on April 6, 2011, Desni called her for help. When Bowie arrived at Desni's house, she could hear Desni screaming, "Help me, he's killing me." Bowie banged on the door and appellant opened it. Bowie observed appellant's arm around Desni's neck and he pulled Desni back from the door. Bowie jerked appellant's arm and hit him. When Bowie hit him, appellant stumbled back and barricaded himself in his bedroom. Appellant was subsequently charged with unlawful restraint and Desni obtained a restraining order against him.

Bowie's testimony was relatively brief, comprising only nine pages out of approximately six hundred pages of testimony in the record. And Bowie was only one of fifteen witnesses offered by the State in the guilt/innocence phase of trial. Therefore, the evidence did not consume an inordinate amount of time.

The evidence was also probative of a fact of consequence to the State. Evidence of the "relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going

---

[29] *See Montgomery,* 810 S.W.2d at 389.

to show the condition of the mind of the accused at the time of the offense" is admissible in a murder trial.[30] Here, the relationship between appellant and his mother was probative of the identity of the murderer. In establishing this identity, the State relied on evidence of appellant's animosity towards his mother and their tumultuous relationship. The prior assault evinced that animosity. In addition, the similarity between the assault and the murder was probative on the question of whether someone other than appellant murdered Desni.

Although the State briefly mentioned the prior assault in closing argument, the State did not suggest that the evidence be considered for an improper purpose. To mitigate any danger of the jury's consideration of the evidence for an improper purpose, the trial court instructed the jury that the assault evidence could only be used to determine appellant's motive, state of mind, or intent. We presume the jury follows the court's instructions.[31] Therefore, any tendency for the evidence to be given undue weight, to suggest a decision on an improper basis, or to confuse or distract the jury was minimal.

Based on the foregoing, we cannot conclude the trial court abused its discretion in determining that the probative value of the evidence outweighed the danger of unfair prejudice.[32] Appellant's second issue is overruled.

---

[30] *See* TEX. CODE CRIM. PROC. ANN. art. 38.36 (West 2014).

[31] *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

[32] *See Smith v. State*, 318 S.W.3d 576, 591–93 (Tex. App.—Texarkana 2010, no pet.).

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.

Do Not Publish
Tex. R. App. P. 47
130627F.U05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

DEON REESE EVANS, Appellant

No. 05-13-00627-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1228191-U.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 18, 2014.