

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. PD-0039-12

**MICHAEL RAY BONDS, Appellee**

**v.**

**THE STATE OF TEXAS**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE SECOND COURT OF APPEALS
MONTAGUE COUNTY**

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., WOMACK, JOHNSON, HERVEY, COCHRAN, and ALCALA, JJ., joined. PRICE, J., dissented. MEYERS, J., did not participate.

**O P I N I O N**

Michael Bonds moved to suppress the evidence seized pursuant to a search warrant by contesting the warrant's validity. The trial judge overruled his motion finding the errors in the warrant's description of the location to be searched did not invalidate the warrant. The court of appeals found the warrant lacked probable cause and reversed. Finding that the warrant was supported by probable cause and sufficiently particular, we reverse the court of

appeals's judgment.

## I. Background

On August 5th, 2008, Texas Department of Public Safety Sergeant Jeff Ashburn, upon presenting his sworn affidavit, sought and obtained a search warrant authorizing the search for "[d]rugs and/or chemicals kept, prepared, or manufactured in violation of the law of the State of Texas, to wit: Possession of Controlled Substance in Penalty Group 1, (Methamphetamine) (Cocaine)" and various drug paraphernalia associated with the distribution of methamphetamine and cocaine from a location described as

> [a] single story residence located at 401 Barker Street, Bowie, Montague County, Texas. Said residence is a white wooden framed residence with a grey composition shingle roof with the front of the residence facing south. Said residence has two (2) windows facing towards Barker Street. In addition, the property has a detached garage northwest of said residence. The garage has a large utility door facing towards Barker Street. Parked east of the garage is a small white and blue camper trailer.

In his supporting affidavit, Ashburn described the suspected place and the items to be seized as stated above. His affidavit also described his investigation as follows. As a commissioned peace officer with the Department of Public Safety for over ten years, the past twenty-six months of which he was assigned to the Narcotics Service, Ashburn stated that he is trained in the investigation of narcotics violations, the handling of witnesses, search warrant preparation, and the investigation of persons who derive substantial income from illegal importation, manufacture, distribution, and sale of illegal controlled substances. Ashburn's investigation began when a credible confidential informant told him in November

2007 that he had seen Bonds in possession of methamphetamine and had also seen methamphetamine in Bonds's home "located at Texas State Highway 59 and Barker Street in Bowie, Montague County, Texas." Ashburn then transported the confidential informant to Bonds's home, which Ashburn identified as "401 Barker Street, Bowie, Montague County, Texas." The confidential informant identified Bonds from a photographic line-up as the person with whom he "conducted a controlled purchase of methamphetamine."

Ashburn further determined that, according to records maintained by the Texas Department of Public Safety, Bonds listed his address as 401 Barker Street, Bowie, Montague County, Texas. Further, Ashburn conducted a criminal-history search revealing Bonds's prior arrest for possession of marijuana and for possession of a penalty-group 1 controlled substance, and multiple arrests for possession of a penalty-group 1 controlled substance analogue. On May 27th, 2008, July 15th, 2008, and August 5th, 2008, Ashburn conducted garbage searches and "obtained care custody and control of refuse that had been discarded and left for collection at the said residence, 401 Barker Street, Bowie, Montague County, Texas." These searches produced a number of melted glass smoking pipes containing drug residue which tested positive for cocaine and methamphetamine, plastic bags containing methamphetamine and cocaine residue, and a MasterCard application addressed to Bonds at 401 Barker Street, Bowie, Texas 76230. With the assistance of other officers, Ashburn executed the warrant and seized methamphetamine, other controlled substances, drug paraphernalia, and United States currency.

## A. In the Trial Court

Bonds filed a pre-trial motion to suppress claiming that the evidence was seized pursuant to an invalid warrant due to the lack of probable cause that the items sought were where they were claimed to be. In support of his motion, Bonds offered and the trial court admitted several photographs in the motion-to-suppress hearing purporting to prove the warrant's description of the location to be searched was partially inaccurate in describing the address as 401 Barker and the roof color as grey.

Taken from several different perspectives, the photographs depict two residences in relatively close proximity to one another and facing the same street (which Ashburn testified was Barker Street) and a garage located behind both residences. Asburn identified the residence that was actually searched. The photographs show it to have the following characteristics:

- a single-story residence;

- presumably wood-framed;

- a white exterior;

- south-facing;

- two south-facing windows;

- a brown shingle roof; and

- a detached, south-facing garage which appears to be behind this residence and has a large utility door.

The photographs also showed that the residence searched displayed a placard that read "422

Cowan," but according to Ashburn, the placard was not there during his investigation or the search warrant's execution. Ashburn testified there were no markings of any kind on the residence searched.

Two of the photographs show in closer detail the characteristics of the other residence which was located to the east of the residence searched:

- a single-story residence;

- manufactured or trailer home;

- a white (or perhaps light grey) exterior

- south-facing;

- the numbers "401" displayed next to the front door;

- six south-facing windows;

- a grey shingle roof; and

- a ramp leading up to a large wooden front porch surrounded by a wooden railing.

A garage can clearly be seen with a large utility door facing Barker Street, although the photographs' perspective restricts our ability to determine the garage's directional relationship to the two residences. The small white and blue camper mentioned in the warrant does not appear in any of the photographs.

Ashburn described the searched residence as a white, wood-framed residence with two south-facing windows and a brown roof. He conceded that his previous description of the location's roof as grey was a mistake. Drawing a distinction between the residences,

Ashburn testified that the other residence was a "premanufactured," or trailer home, as opposed to a wood-framed house. Ashburn testified that, when he referred to 401 Barker in his affidavit, he was referring to the white, wood-framed residence with the brown roof, not the manufactured home with the grey roof. He further testified that he had no difficulty identifying the location intended to be searched and that the intended location was in fact searched.

After hearing Ashburn's testimony, the trial judge denied Bonds's motion and entered findings of fact and conclusions of law. Notable among them, the trial judge found:

7.  The residence searched by authority of the search warrant is in close proximity to two other buildings. One of the buildings is a residence which visibly bears the house numbers "401 Barker Street;" this residence is East of and separate from the residence actually searched by authority of the search warrant. Both residences face South. The residence search[ed] by authority of the search warrant has two windows facing Barker Street. The residence situated to the East of the searched residence has six windows facing Barker Street.

8.  The residence searched by authority of the search warrant is a white, wood frame residence with a reddish brown roof and detached garage. There is a garage located just northwest of [the] residence searched and of the house to the East of the residence searched.[1]

The trial judge further found that Ashburn's affidavit contained errors in the description of the roof color and the address of the property to be searched. However, the trial judge concluded that Ashburn's affidavit established probable cause for the warrant's issuance

---

[1] Court's Findings of Fact and Conclusions of Law at 2–3, No. 2009-0000103M-CR (97th District Court, Montague County, Tex. Nov. 26, 2010).

because the property actually searched had the correct number of windows and, as the executing officer, Ashburn's personal knowledge permitted him to identify the correct location to be searched pursuant to the search warrant.

After the denial of his motion to suppress, Bonds entered a guilty plea to possession of a penalty-group 1 controlled substance with intent to deliver and was sentenced to twenty-five years' confinement.

## B.  In the Court of Appeals

On appeal, Bonds again contended that due to Ashburn's misidentification of the location to be searched in the affidavit, the warrant was not supported by probable cause. The court of appeals agreed and concluded that "the totality of the circumstances set forth in Ashburn's affidavit fail to indicate a fair probability or a substantial chance that the items identified in the warrant would be found at the residence searched."[2] The court held that the affidavit failed to establish the "object-place nexus" because the facts stated in Ashburn's affidavit all linked to 401 Barker and did not "match up" with the location actually searched.[3] In reaching its conclusion, the court assumed, without deciding, that the description of the location intended to be searched "was sufficient to enable officers executing the warrant to locate the target residence and to distinguish it from other places in the community."[4]

---

[2] *Bonds v. State*, 355 S.W.3d 902, 908 (Tex. App.—Fort Worth 2011).

[3] *Id.* at 909

[4] *Id.* at 908.

In assuming that the description of the residence to be searched was adequate and unnecessary to the disposition of the case,[5] the court of appeals implicitly recognized that the probable cause and particularity components of the Fourth Amendment, while related, may be subject to distinct analyses. We think the court's implication is correct. However, we find that in holding that the affidavit's facts "do not 'match up' with the location that was actually searched" the court conducted a hybrid analysis which incorporated both a probable cause and particularity determination simultaneously. While a single analysis consisting of both Fourth Amendment requirements may be warranted in cases involving a facially invalid warrant, the instant case's facts require separate analyses. We address the issues of probable cause and particularity in turn.

## II. Analysis

### A. Probable Cause

The Fourth Amendment to the United States Constitution mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[6] Probable cause exists when, under the totality of the circumstances, there is a fair probability or substantial

---

[5] *Id.* at 907–908 (citing Texas Rule of Appellate Procedure 47.1, which provides that opinions must address issues necessary to final disposition of appeal, and holding that "[w]e therefore need not address the adequacy of the search warrant's description of the place to be searched—the residence now bearing the address placard for 422 Cowan.").

[6] U.S. CONST. amend IV.

chance that contraband or evidence of a crime will be found at the specified location.[7] It is a flexible and nondemanding standard.[8]

While an appellate court typically reviews a trial judge's motion-to-suppress ruling under a bifurcated standard,[9] a trial court's determination whether probable cause exists to support a search warrant's issuance is constrained solely to the affidavit's four corners.[10] When we review a magistrate's decision to issue a warrant, we apply a highly deferential standard of review because of the constitutional preference for searches conducted pursuant to a warrant over warrantless searches.[11] Provided the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable-cause determination.[12] The magistrate may interpret the affidavit in a non-technical, common-sense

---

[7] *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (citing *Illinois v. Gates*, 46 U.S. 213, 238, 244 n.13 (1983)); *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007).

[8] *Rodriguez*, 232 S.W.3d at 60.

[9] *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (stating a bifurcated review of a motion-to-suppress ruling requires giving almost total deference to the trial judge's determination of historical facts and then reviewing de novo the trial judge's application of the law).

[10] *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *see Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention.").

[11] *Swearingen v. State*, 143 S.W.3d 808, 810–11 (Tex. Crim. App.2004).

[12] *McLain*, 337 S.W.3d at 271 (citing *Gates*, 462 U.S. at 234–37).

manner and may draw reasonable inferences solely from the facts and circumstances contained within the affidavit's four corners.[13] Appellate courts should not invalidate a warrant by interpreting the affidavit in a hypertechnical, rather than a common-sense, manner.[14] When in doubt, the appellate court should defer to all reasonable inferences that the magistrate could have made.[15]

Based solely on the affidavit's four corners, we find that the magistrate had a substantial basis for concluding probable cause existed to search the location described in the affidavit and warrant. The affidavit established a sufficient nexus between criminal activity, the things to be seized, and the place to be searched. From the text of Ashburn's affidavit, the magistrate could find that Ashburn was employed by the Texas Department of Public Safety as a commissioned peace officer for over ten years, and for the past twenty-six months he was assigned to the Narcotics Service as a Sergeant. The magistrate could further find that Ashburn is trained in the investigation of narcotics violations, the handling of witnesses, search warrant preparation, and the investigation of persons who derive substantial income from illegal importation, manufacture, distribution, and sale of illegal controlled substances.

Pertaining to the Bonds investigation, the magistrate could find the following: (1) in November 2007, a confidential informant (CI), who has provided Ashburn truthful

---

[13] *State v. Jordan*, 342 S.W.3d 565, 569 (Tex. Crim. App. 2011).

[14] *McLain*, 337 S.W.3d at 272.

[15] *Id*.

information in the past and knows what methamphetamine looks like, saw a man who the CI knew as "Mike Bonds" in possession of methamphetamine, a penalty-group 1 controlled substance; (2) the CI saw Mike Bonds possess methamphetamine in his house, known to the CI to be located at Texas State Highway 59 and Barker Street, Bowie, Montague County; (3) Ashburn transported the CI to Mike Bonds's residence in Bowie County, which the magistrate could reasonably infer was the location where the CI observed Bonds possess methamphetamine and was identified by the CI as Bonds's residence; (4) the CI identified Bonds from a photo lineup as the person he saw possess methamphetamine; (5) according to the Texas Department of Public Safety records, Bonds himself identified his address on his driver's license as 401 Barker Street, Bowie, Montague County, Texas; (6) from these records, the magistrate could reasonably infer that Ashburn identified Bonds's residence as 401 Barker Street; (7) on May 27th, 2008, July 15th, 2008, and August 5th, 2008, Ashburn searched trash left for collection at 401 Barker Street—which could be reasonably understood as the house the CI identified as Mike Bonds's residence—and discovered drug paraphernalia containing methamphetamine and cocaine residue and a MasterCard application addressed to Michael Bonds, 401 Barker Street, Bowie, Texas 76230; and (8) Bonds had a number of prior arrests for drug possession and a previous conviction for possession of a penalty-group 1 controlled substance.

From the face of Ashburn's affidavit, the magistrate had a substantial basis to find, either directly or through reasonable inference, probable cause that contraband or evidence

of a crime will be found at the described location and satisfactorily established a nexus between criminal activity, the things to be seized, and the place to be searched. Therefore, probable cause existed to search the location described in the affidavit and repeated verbatim in the warrant: A single story, white wood-framed, south-facing residence located at 401 Barker Street, Bowie, Montague County, Texas, a grey composite-shingle roof, and two windows facing Barker Street, a detached garage located northwest of the residence, a garage with a large utility door facing towards Barker Street, and had a small white and blue camper trailer parked east of the garage.

Having found the warrant supported by probable cause, whether the search of the residence in fact searched was constitutionally permissible now becomes a question of whether the warrant's description was sufficiently particular within the demands of the Fourth Amendment.

## B. Particularity

In addition to the prevention of general searches, the Fourth Amendment's particularity requirement "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his powers to search."[16] The constitutional objectives of requiring a "particular" description of the place to be searched include: (1) ensuring that the officer searches the right place; (2) confirming that probable cause is, in fact, established for the place described in the warrant; (3) limiting

---

[16] *Groh v. Ramirez*, 540 U.S. 551, 561 (2004).

the officer's discretion and narrowing the scope of his search; (4) minimizing the danger of mistakenly searching the person or property of an innocent bystander or property owner; and (5) informing the owner of the officer's authority to search that specific location.[17]

A warrant is sufficiently particular if it enables the officer to locate the property and distinguish it from other places in the community.[18] The particularity requirement is related to the probable cause requirement in that it enables the magistrate to determine whether probable cause exists for the requested search.[19] However, the Fourth Amendment does not require perfection in the warrant's description of the place to be searched.[20] A warrant may be invalid upon its issuance because its description of the place to be searched or the person or things to be seized is insufficient on its face. Alternatively, it may prove insufficiently particular as a result of subsequently discovered facts.[21] The Supreme Court's opinion in

---

[17] *Long v. State*, 132 S.W.3d 443, 447 (Tex. Crim. App. 2004).

[18] *Etchieson v. State*, 574 S.W.2d 753, 759 (Tex. Crim. App. 1978); *see Steele v. United States*, 267 U.S. 498, 503 (1925) ("It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.").

[19] *State v. Barnett*, 788 S.W.2d 572, 576 (Tex. Crim. App. 1990); 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.5, at 709 (5th ed. 2012).

[20] 2 LAFAVE § 4.5, at 710 (stating that "it does not follow that any and all errors in description will invalidate a search warrant").

[21] *See, e.g.*, *Maryland v. Garrison*, 480 U.S. 79, 85–86 (1987) (recognizing the distinction between the validity of a warrant when it was issued and the validity upon discovering ambiguity upon its execution and ultimately holding the warrant valid in both respects).

*Groh v. Ramirez* illustrates the former. Agent Groh sought a search warrant to search the Ramirezes' home based on information from an informant that a large stock of weaponry, including an automatic rife, grenades, and similar weapons, were located on the Ramirezes' ranch.[22] Despite Agent Groh's application, which particularly described the place to be searched and the items to be seized, the warrant itself failed to describe any of the items that [Groh] intended to seize.[23] Instead of describing the stockpile of firearms Groh intended to seize in the portion of the warrant form that required a description of the person or property to be seized, Groh typed only a description of the Ramirezes' house.[24] The Court held that the warrant was plainly invalid and concluded that "the warrant did not describe the items to be seized *at all*."[25] The Court continued, "In this respect the warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law."[26] Similarly, there can be little argument that a warrant that so obviously fails to describe the place to be searched, and as a result does not meaningfully define the boundaries of the search, is facially invalid.

However, the warrant's description in the present case does not suffer from the same

---

[22] *Groh*, 540 U.S. at 553.

[23] *Id.* at 554.

[24] *Id.*

[25] *Id.* at 557–58 (emphasis in original).

[26] *Id.* at 558.

infirmity; it is clearly facially particular. The description contains the location's street address complete with the city and county, the use of the location as a residence, building construction, exterior color, roof color and material type, the direction the residence is facing, the number of windows facing a particular street, and the location of a garage near the residence, a description of the garage, and the color of a trailer parked near the garage. Like the warrant at issue, most inaccuracies in a warrant's description, as a practical matter, will be discovered after the issuance of the warrant and perhaps during or after the warrant's execution. It follows that a particularity determination of a facially particular warrant will incorporate extrinsic facts in addition to the warrant's four corners. Despite the court of appeals's express claim that it does not address the adequacy of the warrant's description, we understand its holding that the affidavit does not provide probable cause to search the house "actually searched" to incorporate a particularity component in its larger probable cause analysis which considered facts beyond the warrant's four corners.

Considering the warrant's four corners and the additional facts adduced in the motion-to-suppress hearing, we find that the warrant's description of the location to be searched was sufficiently particular within the Fourth Amendment's command. The description of the location to be searched described the location actually searched to a sufficient degree that enabled the officers to locate and distinguish the property intended to be searched from another in the community. The trial judge found the warrant's description of the location to be searched was erroneous in only two respects: the color of the roof and the address. The

remaining descriptive factors accurately described the house that was searched. The location searched was a south-facing, white, wood-framed residence that had two windows facing Barker Street. In contrast, the residence to the east of the searched property had six windows facing Barker Street, and according to Ashburn's testimony was a "premanufactured" home, not a wood-framed house. Further, the manufactured residence's large ramp leading to a wooden deck was a prominent feature that distinguished the two locations and was not included in the warrant's description. Despite listing an incorrect address and roof color, the balance of the description was sufficient to enable an officer to distinguish which property was intended to be searched.

Further, any ambiguity that might have arisen from the presence of common descriptive factors of the manufactured home labeled 401 Barker and the residence actually searched was resolved by Ashburn's personal knowledge of the location and residence intended to be searched. In *Bridges v. State*, we considered the validity of a warrant which described the place to be searched as a "pink wood frame building having white trim located at 2134 Hardy in Taylor County, Texas."[27] Holding that the search warrant was valid, we not only noted that the warrant described the house to be searched by its street address, color, construction type, county, and state, but we considered the fact that the warrant-executing officers had just been to the location where they had arrested Bridges, obtained the warrant,

---

[27] *Bridges v. State*, 574 S.W.2d 560, 562 (Tex. Crim. App. 1978).

and returned to the same location.[28]  We held that there was no reasonable probability that the officers would search any place other than the intended house.[29] Our consideration of the officer's knowledge accords with a number of federal courts of appeals and several of our intermediate courts of appeals that have addressed the particularity requirement when confronted with a warrant's description that is not entirely accurate.[30]  Factoring the officer's knowledge into the particularity analysis is especially appropriate when the warrant's authorization to search applies to a reasonably limited number of locations, mitigating the fear of a warrant authorizing a general search.  While the thrust of Bonds's argument in support of the evidence's suppression was the lack of probable cause, the evidence admitted in the motion-to-suppress hearing suggested that if the warrant's description was ambiguous as to what residence could be searched under the warrant's authority, it was only an issue of

---

[28]  *Id.* at 561–62.

[29]  *Id.* at 562.

[30]  *See, e.g.*, *United States v. Gamboa*, 439 F.3d 796, 806 (8th Cir. 2006) (finding that "the officers had conducted extensive surveillance of the premises before the warrant was executed, the officers had personal knowledge of the premises that they intended to search, and the premises that they intended to search were, in fact, searched."); *United States v. Johnson*, 437 F.3d 69, 73 (D.C. Cir. 2006) (considering the officer's familiarity with the premise when executing officer also obtained the warrant); *United States v. Vega-Figueroa*, 234 F.3d 744, 756 (1st Cir. 2000) (same); *United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998) (same); *United States v. Gordon*, 901 F.2d 48, 50 (5th Cir. 1990) (same); *Rogers v.* State, 291 S.W.3d 148, 154–55 (Tex. App.—Texarkana 2009, pet. ref'd) (same); *Smith v. State*, 962 S.W.2d 178, 185 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (same); *Taylor v. State*, 974 S.W.2d 851, 857 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (same); *Jones v. State*, 914 S.W.2d 675, 678 (Tex. App.—Amarillo 1996, no pet.) (same).

which one of two residences could be searched. It was not argued, nor does the evidence support, that the warrant purportedly permitted the search of any one location among a vast universe of potential targets.

Ashburn's familiarity with the location to be searched and that he was both the affiant and participated in the warrant's execution are circumstances which resolve any ambiguity created by the description's errors and render the warrant sufficiently particular. Ashburn was quite familiar with the location searched. He had been to that location a minimum of four times before the warrant's execution. Ashburn first identified the location searched when the CI identified where he observed Bonds in possession of methamphetamine. Through his additional investigation, Ashburn had been to the location searched three additional times over the course of four months to search the trash in front of the location—the last time being the day of the warrant's issuance and execution. Most significantly, Ashburn testified that the location intended to be searched was the actual location searched.

Bearing in mind the constitutional objectives of a particular description, we find the risks an address error and an incorrect roof color potentially pose are absent here. Ashburn's significant familiarity with the location to be searched (and actually searched) leave little chance that the officers would mistakenly search the wrong location and the property of an innocent property owner. There is also little potential under the facts of this case that looking to the officer's knowledge allows limitless officer discretion in executing a warrant.

Assuming ambiguity existed, the warrant's description on its face limited the authority to search one of two houses—either the residence searched or the manufactured home labeled 401. Because the warrant's authorization to search was substantially narrow, Ashburn's discretion to choose which residence to search based on his familiarity with the location intended to be searched was appropriately limited.

### III. Conclusion

We hold that the warrant was supported by probable cause, and the location to be searched, while incorrect in part, was described with sufficient particularity. Because the search of Bonds's residence was supported by a valid search warrant, we reverse the court of appeals's judgment and affirm the judgment of the trial court.

DATE DELIVERED: March 20, 2013

PUBLISH