**Affirmed and Memorandum Opinion filed October 17, 2017.**



In The

# Fourteenth Court of Appeals

### NO. 14-16-00355-CR

**RONALD THOMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1418275**

## M E M O R A N D U M   O P I N I O N

Appellant Ronald Thomas appeals his conviction for the first degree offense of aggravated robbery. A jury convicted appellant and assessed his punishment at life in prison. Appellant raises two issues on appeal, both of which challenge the validity of searches of his cellular phone. Because appellant did not preserve his first issue for review and his second issue is incorrect, we affirm.

## Background

On February 17, 2014, two men robbed a Game Stop location in the Houston area. The robbers wore bandanas across their faces and had jacket hoods pulled down to further obscure their features. Officers from the Houston Police Department (HPD) arrived during the robbery, and the two men fled on foot. Officer Vu found appellant at an apartment complex near the Game Stop immediately after the robbery. Vu became suspicious of appellant because he looked nervous and out of breath. Appellant began walking faster when he saw Vu and then disappeared from Vu's sight as he rounded a corner. Vu followed appellant around the corner and began looking for him in the area, finding him crouching down behind a trailer. Vu returned appellant to the scene of the robbery, where Game Stop employees positively identified appellant as one of the robbers based in part on the distinctive blue jeans he was wearing. Vu left the scene after HPD finished its investigation but was subsequently recalled several hours later when Game Stop employees noticed a suspicious vehicle parked outside the store.

Vu returned to the location to find an unoccupied car idling in the parking lot. He noticed a large puddle of water underneath the car and surmised that the car had been running for some time. The car was unlocked, and Vu testified that he entered it in an attempt to find out who owned it. He found a wallet and two cellular phones inside, one of which was an iPhone. Vu pressed the central button on the iPhone to activate it, and the background photograph showed appellant, whom Vu had arrested earlier. Vu did not search the phone further but collected both phones and the wallet as evidence. Later, a search warrant was issued to allow forensic analysis of the phones. Text messages between appellant and co-defendant Jonathan Galloway were recovered along with other evidence.

During trial, Vu testified without objection to finding appellant's cell phone, pressing a button on it, and seeing an image of appellant on the phone. When the State

subsequently sought to introduce evidence obtained from the forensic search of appellant's phone, appellant urged the court to rule on his motion to suppress the evidence obtained. The trial court then recessed the jury and held a hearing on the motion. At the conclusion of the hearing, the trial court denied the motion to suppress; trial then continued and the evidence from the phone was admitted.

In his first issue, appellant challenges Vu's warrantless search of appellant's cell phone. In his second issue, appellant contends the trial court erred in denying his motion to suppress.

### *Warrantless Search*

In his first issue, appellant contends that the trial court erred when it allowed Vu to testify regarding appellant's iPhone because simply turning the cellular phone on constituted an unreasonable warrantless search. However, appellant has failed to preserve this issue for appeal.

To preserve alleged error for appellate review, Texas Rule of Appellate Procedure 33.1(a) requires that a party make a timely objection, request, or motion that states the specific grounds for the requested ruling if the grounds are not apparent from the context. Tex. R. App. P. 33.1(a). Further, the trial court must have ruled or refused to rule on the objection, request, or motion in order to preserve the complaint. *Id*.

Appellant filed several pretrial motions to suppress. In the motion referenced above, appellant requested the suppression of any photos found on appellant's cell phone, although appellant did not refer to Vu's warrantless search. Nevertheless, we will liberally construe the motion to suppress as challenging Vu's search. As a general rule, a sufficiently specific motion to suppress will preserve error in the admission of evidence if the motion is overruled by the court following a pretrial hearing. *Trung The Luu v. State*, 440 S.W.3d 123, 127 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

3

But when, as here, the trial court does not hold a pretrial hearing on the motion, the defendant must make a timely objection to the evidence when it is offered at trial in order to preserve error. *See* Tex. R. App. P. 33.1(a); *Luu*, 440 S.W.3d at 123. Even constitutional errors may be waived by failure to object at trial. *Luu*, 440 S.W.3d at 123.

At trial, Vu testified as to the initial search of the car and his examination of appellant's phone. During this testimony, the prosecutor and Vu engaged in the following exchange:

Q: Were the cellular phones on?

A: Yes.

Q: Were you able to—when you have a cellular phone, are you able to press a button to get information?

A: Yes ma'am.

Q: What kind of cellular phones were they?

A: One cellular phone was an iPhone, and the other one was a Samsung.

Q: Now, for the iPhone, were you—how—do you have an iPhone?

A: Used to, yes.

Q: How does an iPhone work? Like how, when you have an iPhone, how do you turn it on?

A: You can press the center [button] on the bottom.

Q: And then what happens when you pressed the center button on the bottom?

A: There was a picture of the defendant in the background.

Q: So in this case, you pressed the center button?

A: Yes.

Q: And whose picture?

A: The defendant.

Q: How do you know it was the defendant?

A: His picture was on the background of the iPhone.

4

Q: What about the other phone?

A: Other phone, I don't remember on the other phone.

Q: Now, did you recognize the person on the phone as the person you had just apprehended in the apartment complex?

A: Yes, ma'am.

Appellant did not object to this testimony prior to its admission.[1] Appellant did not refer to Vu's actions in the subsequent suppression hearing. Appellant did not obtain a ruling on his motion to suppress until several days after the jury had heard this testimony. Accordingly, appellant did not preserve his first issue for review, and we overrule that issue.

### *Probable Cause*

In his second issue, appellant contends that the trial court erred when it admitted evidence from a forensic search of appellant's phone because the underlying evidentiary search warrant was not supported by probable cause as required by the Fourth Amendment of the United States Constitution and Chapter 18 of the Texas Code of Criminal Procedure. *See* U.S. Const. amend. IV; Tex. Code Crim. Proc. arts. 18.01-18.24.

An officer must present a sworn affidavit to a magistrate in order to be issued a search warrant for items constituting evidence of an offense or tending to show a particular person committed an offense. Tex. Code Crim. Proc. art. 18.01(b). The affidavit should set forth sufficient facts to establish probable cause that (1) a specific offense has been committed, (2) the specifically-described property or items to be searched for or seized constitute evidence of that offense or evidence that a particular

---

[1] Appellant, however, did raise a hearsay objection to the prosecutor's question that immediately preceded the excerpted exchange. The trial court instructed the prosecutor to rephrase, and the prosecutor did so. This earlier hearsay objection did not preserve any argument relating to the legality of the warrantless search.

person committed that offense, and (3) the property or items constituting such evidence are located at the place to be searched. *Id*. arts. 18.01(c), 18.02(a)(10). Probable cause exists when, under the totality of the circumstances, there is a fair probability or substantial chance that contraband or evidence of a crime will be found at the specified location. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). It is a flexible and nondemanding standard. *Id*. Our review of the magistrate's decision to issue a search warrant is limited to the four corners of the affidavit. *Id*. We review that decision under a highly deferential standard of review, pursuant to the constitutional preference for warrant-based searches. *Id*. We will uphold the magistrate's probable-cause determination so long as the supporting affidavit reveals a substantial basis for concluding that probable cause existed. *Id*. The magistrate should interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences solely from the facts and circumstances contained within the affidavit's four corners. *Id*. In turn, we should not invalidate a warrant by interpreting the affidavit in a hyper-technical manner; when in doubt, we defer to all reasonable inferences that the magistrate could have made. *Id*.

In his affidavit in support of the search warrant, Officer Mora stated that he had reviewed the relevant offense report prepared by officers Vu and Yusuf. These officers responded to a reported armed robbery at a Game Stop location on February 17, 2014. Yusuf stated that two black males wearing bandanas over their faces fled from the back of the store when officers arrived. According to Game Stop employees, the two men had entered the store with guns, demanded money, and then took money from the cash register. Officers pursued the men, and Yusuf described several clothing items and a gun being found along the route taken by the suspects. The clothing matched items reportedly worn by the robbers, including two black and white bandanas. Vu tracked one of the suspects, later identified as appellant. When found, appellant was wearing

the same clothing that he was wearing when he committed the robbery. Officers were unable to locate the other suspect at that time.

Vu further reported observing a "suspicious" vehicle parked near the Game Stop that appeared to have been left running with the doors unlocked for an extended period of time due to the collection of fluids underneath the vehicle. Inside the vehicle, Vu found two cell phones, including appellant's iPhone, which Mora described by color and serial number. Vu also discovered a wallet in the vehicle containing a credit card and a probation identification card belonging to co-defendant Galloway. While waiting for a wrecker to tow the vehicle, Vu was approached by an individual who claimed that the vehicle was his and Galloway had borrowed it. The individual was upset that his vehicle had been used in a robbery and granted Vu permission to search the vehicle. The individual further told Vu that he had received a phone call from Galloway shortly after the robbery in which Galloway told him "me and Jay hit a place and they caught Jay." Galloway further told the individual that the vehicle had been left at the Game Stop. Mora subsequently showed the individual a photographic lineup, and the individual identified a photograph of Galloway as the person who had told him on the phone that he "hit a lick" and "they caught Jay." Mora explained that "hit a lick" is street slang for committing a robbery.

Mora further averred, based on his training and experience, that robbery suspects communicate through cell phones: texting, calling, and sending images in preparation for committing the offense. Mora also stated that cell phones contain identifying information such as photographs, messages, emails, and contact lists, and that a search of the identified cell phones likely would provide evidence of the aggravated robbery or evidence tending to show the identity of the robbers. In the resulting search warrant, the magistrate authorized a forensic examination of appellant's cell phone for information constituting evidence of an offense or tending to show that a particular

7

person committed an offense, including photographs, text or multimedia messages, call logs, and contact information.

Appellant asserts that Mora offered an insufficient explanation as to why the cell phones would contain evidence relating to this particular armed robbery. He describes the statements by the owner of the vehicle as providing "at best, a tenuous connection" between the cell phones and Galloway. He further argues that Mora's generalizations regarding the possible uses of cell phones to facilitate crime do not create probable cause regarding these particular phones in this case. He also emphasizes that this is not a case where an officer's specialized knowledge would be of benefit, such as in cases where officers have explained that pedophiles store child pornography on their personal computers, citing *Checo v. State*, 402 S.W.3d 440, 449 (Tex. App.—Houston [14th Dist] 2013, no pet.).

Despite appellant's arguments, however, this is not a close case. In his affidavit, Mora directly tied the vehicle in which the cell phones were found to the armed robbery. The vehicle was found at the scene after the robbery and apparently had been running and left unlocked for a prolonged period of time. The owner of the vehicle reported that he had loaned the vehicle to Galloway, who subsequently admitted to the owner that he had used the vehicle to "hit a lick," which is street slang for robbery. Galloway also told the owner that his cohort in the robbery had been caught, which is exactly what happened to appellant. Identification belonging to Galloway was also discovered in the vehicle. Additionally, Mora explained that based on his training and experience, robbery suspects often communicate through cell phones in preparation for committing the offense. We agree with appellant that there was no need for "specialized knowledge" in this case. The magistrate reasonably could have inferred from common sense and the facts recounted in Mora's affidavit that there was a fair probability or substantial chance that cell phones found in the apparent getaway car would contain

8

evidence pertaining to the robbery or who committed the robbery. *See Bonds*, 403 S.W.3d at 873 (explaining that a magistrate should interpret an affidavit in a common-sense manner, drawing reasonable inferences from the circumstances presented).

Under the high level of deference we afford the issuing magistrate's determinations and based on the totality of the circumstances as presented in Mora's affidavit, we conclude that the magistrate had a substantial basis for determining that probable cause existed for the search of appellant's phone. *See id*. The trial court did not err in denying appellant's motion to suppress. We overrule appellant's second issue.

We affirm the trial court's judgment.


/s/    Martha Hill Jamison
        Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby.
Do Not Publish — Tex. R. App. P. 47.2(b).