

# NUMBER 13-16-00509-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DANIEL H. ALEMAN II,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

**On appeal from the 36th District Court
of San Patricio County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Hinojosa
Memorandum Opinion by Chief Justice Valdez**

A grand jury in San Patricio county issued an eight-count indictment against appellant Daniel H. Aleman II for the offenses of: aggravated sexual assault of a child (two counts); sexual assault (one count); indecency with a child (four counts); and improper visual recording (one count). *See* TEX. PENAL CODE ANN. §§ 22.021, 22.011,

21.11, 21.15 (West, Westlaw through 2017 1st C.S.).  After being indicted, Aleman moved to suppress evidence obtained under a warrant that authorized officials to seize "electronic media" at his residence.  The trial court conducted a hearing on the matter and denied Aleman's motion to suppress.  Thereafter, Aleman pleaded guilty to all counts alleged in the indictment, and the trial court sentenced him to forty years in prison as to the aggravated sexual assault of a child counts; twenty years in prison as to the sexual assault and indecency with a child counts; and two years in prison as to the improper visual recording count.  The trial court ordered that the sentences on all counts run concurrently.

By one issue, Aleman contends the warrant failed to comply with the requirement of the Fourth Amendment that a warrant "particularly describ[e] the place to be searched, and the . . . things to be seized," and therefore, the trial court should have suppressed all evidence obtained under the warrant.  *See* U.S. CONST. amend. IV.  We affirm.

## I.  BACKGROUND

At the suppression hearing, the State admitted the search warrant affidavit that the lead officer prepared for the magistrate judge to consider in issuing the warrant.  The affidavit provided the following facts.

Aleman worked at a Goodwill store.  On December 23, 2014, a female patron entered a dressing room to try on clothing.  While in the dressing room, she observed the bottom part of a clothing cart (Z-cart) slightly protruding underneath her dressing room door.  The patron also noticed what appeared to be a small camera the size of a cigarette lighter taped to the bottom corner of the Z-cart.  The camera had a Secure Digital (SD) card, which is a feature that allows users to export content on the camera to other digital

2

devices. The patron removed the camera from the Z-cart and confronted Aleman, who was standing near the cart outside the dressing room. The patron demanded that Aleman call the store manager, but Aleman grabbed the device from the patron's hands and walked away toward the storage room. Shortly thereafter, Aleman returned to the dressing room area without the camera and without the store manager. By this point, a police officer arrived at the store to investigate the matter. Aleman told the officer that the patron mistook his pedometer[1] for a camera. However, Aleman could not produce a pedometer to clear up the confusion.

Based on the patron's report, authorities believed Aleman committed the state-jail felony offense of invasive visual recording in violation of Texas Penal Code section 21.15. To further the investigation, authorities obtained access to surveillance video at the Goodwill store on December 23, which, according to the search warrant affidavit, showed the following:

> [A]t 5:21 pm, two teenage females had walked into one of the dressing rooms and again on video it shows [Aleman] positioning a device on the Z-cart and sticking the cart under the dressing room door where the two young females had gone into. [Aleman] walks around the area and at one point he removes the Z-Cart and walks into dressing room 1 or 2 and pulls the Z-cart leg into the dressing room and then pushes it back out as to take the camera off of the Z-cart. At 5:24 pm, another two young females, possibly 12 to 14 years old also walk into a dressing room and again [Aleman] positions the Z-Cart leg under the door at each room. [Aleman] removes the Z-cart at one point and pulls the Z-cart closer to camera 10 where this was all viewed from and a device is observed taped to the corner leg of the Z-cart. [Aleman] reaches down and removes the device and sticks the device in his front pocket and walks away.
>
> By reviewing only [the] video footage [on December 23], [Aleman] is seen recording five different females throughout the day. Officers searched the back-storage room area and were never able to locate the devi[c]e as [Aleman] had apparently hid it. [Aleman] was suspended from work and was escorted out of the store. The following morning, unknown to the

---

[1] A pedometer is a small digital device that keeps count of a person's steps throughout the day.

3

employees opening the store, [Aleman] was not supposed to be at the store. According to one of the employees who opened the store, [Aleman] came inside the store and went straight back to the storage room area. This employee stated that by the time he made it back to the storage room he observed [Aleman] grab something from behind a plastic shelf in the storage room and place the unknown item into his pocket. The employee advised that [Aleman] then walked out of the storage room and left the store.

The search warrant affidavit further stated that the "device that [Aleman] had is believed to be at his home as this device did have an SD card port on it and can be downloaded onto a computer to view."

Following the December 23 incident, authorities applied for and obtained a warrant to search for and seize "electronic media" at Aleman's residence, to wit:

personal computers and electronic storage devices capable of receiving or storing electronic data, including any external storage devices such as, but not limited to floppy discs and diskettes (including zip discs and cartridges), digital video discs (DVD's) compact discs (CD's), flash drives ("thumb drives"), external hard drives, tape drivers, digital video recorders (including TiVo), internet appliances, video game consoles (including Nintendo Wii), MP3 players (including Apple IPod), digital cameras and digital camera memory media, magnetic tapes and disks, cellular telephones, personal digital assistants (PDA's), tape recordings, and audio tapes; the hardware necessary to retrieve such data, including, but not limited to, central processing units (CPU's) connecting devices, viewing screens, disc and cartridge drives, tape drives, printers, and monitors; the manuals, with all software, handwritten notes, or printed materials describing the operation of said computers, hardware and software; and, any and all passwords found at the location that may allow access to any of the aforementioned devices and equipment.

Authorities executed the warrant at Aleman's residence and seized various electronic devices, including a camera, a laptop, computer hard drives, cell phones, a thumb drive, an Olympus media card, a Halo device, and pornographic video tapes and DVDs. A search of these devices uncovered photos and videos of individuals trying on clothes in dressing rooms and of two children, ages four and six, performing oral sex on Aleman. The trial court denied Aleman's motion to suppress. This appeal followed.

4

## II.    DISCUSSION

Aleman contends the warrant's description of "electronic media" was not sufficiently particular to meet the Fourth Amendment's command, and therefore, any incriminating electronic media should have been suppressed.

## A.    Applicable Law

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.  Probable cause exists when, under the totality of the circumstances, there is a fair probability or substantial chance that contraband or evidence of a crime will be found at the specified location. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013).

A warrant and supporting affidavit satisfies the Fourth Amendment when it recites facts sufficient to show (1) that a specific offense has been committed, (2) that the property or items to be searched for or seized constitute or contain evidence of the offense or evidence that a person committed it, and (3) that the evidence sought is located at or within the thing to be searched.  *Sims v. State*, 526 S.W.3d 638, 645 (Tex. App.—Texarkana 2017, no pet.).  The third element above elucidates the Fourth Amendment's particularity requirement, which is at issue in this appeal.  Regarding this requirement, the Texas Court of Criminal Appeals has explained that:

> [T[he Fourth Amendment's particularity requirement assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his powers to search.  The constitutional objectives of requiring a particular description of the place to be searched include:  (1) ensuring that the officer searches the right place; (2) confirming that probable cause is, in fact, established for the place described in the warrant; (3) limiting the officer's discretion and narrowing the scope of his search; (4) minimizing the danger of mistakenly searching

5

the person or property of an innocent bystander or property owner; and (5) informing the owner of the officer's authority to search that specific location.

*Bonds*, 403 S.W.3d at 874–75 (internal quotes omitted).

A warrant is sufficiently particular if it enables the officer to locate the property and distinguish it from other places in the community. *Id.* at 875. The degree of specificity required is flexible and will vary according to the crime being investigated, the item being searched, and the types of items being sought. *See United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011). "[T]he Fourth Amendment does not require perfection in the warrant's description of the place to be searched." *Bonds*, 403 S.W.3d at 875. However, the Fourth Amendment "prohibits general warrants authorizing officials to rummage through a person's possessions looking for any evidence of a crime." *United States v. Layne*, 43 F.3d 127, 132 (5th Cir. 1995).

## B.    Standard of Review

When reviewing a magistrate's decision to issue a warrant, we apply a "highly deferential standard of review because of the constitutional preference for searches conducted pursuant to a warrant over warrantless searches." *See Walker v. State*, 494 S.W.3d 905, 907 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). As such, we must uphold the magistrate's decision if the magistrate had a "substantial basis" for concluding that a search warrant probably would uncover evidence of wrongdoing. *See id.* We review a search warrant affidavit in a "non-technical, common-sense manner, drawing reasonable inferences solely from the facts and circumstances contained within the affidavit's four corners." *Id.* We are not to interpret the affidavit in a hypertechnical manner. *See id.* at 908.

## C.    Analysis

6

The warrant in this case authorized the seizure of "electronic media" at Aleman's residence based on information that Aleman used a hidden camera to record patrons at a Goodwill store on December 23, 2014. The warrant authorized the seizure of cameras as well as various other electronic devices specifically listed in the warrant. We observe that the warrant's specification of these devices made it facially particular and also advanced several constitutional objectives of requiring a particular description of the place to be searched. For example, it ensured that the officer searched the right devices; it limited the officer's discretion and narrowed the scope of the search to specific devices; it minimized the danger that the officer may mistakenly search other items or devices not specifically described in the warrant; and it informed Aleman of the officer's authority to search the devices listed in the warrant. *See Bonds*, 403 S.W.3d at 874–75.

Nonetheless, Aleman counters that the warrant's specification of the various devices created an overbreadth problem that undermined (rather than advanced) the constitutional objectives of requiring particularity. Specifically, Aleman argues the "laundry list" of non-camera devices identified in the warrant gave officers unfettered discretion to rummage through all his digital devices even though officials knew only that he used a camera device to commit the crime. However, other than citing to the general rule requiring particularity in a warrant, Aleman provides no legal authority to support his position that the warrant's specification of "electronic media" in this case was prohibitively overbroad, and we find none. In any event, the facts showed that, immediately after the December 23 incident, Aleman hid the camera in a secret place at the Goodwill store and retrieved it the following morning, giving him a window of opportunity to export electronic media from his camera to other unknown electronic devices using the camera's SD card.

7

Therefore, the facts in the search warrant affidavit support a finding that evidence of improper visual recording tied to the December 23 incident could have been stored on the various non-camera devices that were specifically described in the warrant.

We note that Aleman's overbreadth argument might have fared better under different facts—for example, if authorities caught Aleman red-handed and immediately seized his camera, which did not have data-transfer capabilities. Under that factual scenario, there would be little reason to search various non-camera devices at his residence because Aleman would have had no opportunity to transfer incriminating media content to other electronic devices. However, considering the facts in this case and giving appropriate deference to the magistrate's decision to issue the warrant, we hold that the warrant's description of "electronic media" was sufficient to meet the Fourth Amendment's particularity requirement. *See id.* We overrule Aleman's sole issue.[2]

---

[2] We note that the warrant in this case also yielded evidence to support Aleman's conviction for two counts of sexual exploitation of a child in the United States District Court for the Southern District of Texas. *See United States v. Aleman*, 675 Fed. Appx. 441, 442–43 (5th Cir. 2017). In that case, as in this case, Aleman challenged the warrant under the Fourth Amendment; however, he did so from a different angle, arguing the warrant was "insufficiently particular because it authorized only a seizure of the digital items found in his home but not a forensic search of those items." *See id.* at 443–44. The federal Fifth Circuit rejected Aleman's argument under the good-faith exception and held a reasonable officer could have understood the warrant to permit a forensic search of the contents of Aleman's electronic media. *See id.* at 443; *see also United States v. Leon*, 468 U.S. 897, 919 (1984) (holding that the Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid). In its briefing to this Court, the State invites us to "consider following the ruling of the Fifth Circuit as discussed above, and determine that the good-faith exception to the exclusionary rule applies, so that no further analysis is required." We appreciate the State's invitation. However, we decline to resolve this appeal in that manner because the Fifth Circuit's good-faith analysis pertained to the unique particularity argument advanced by Aleman in that case, which differs from the overbreadth argument he makes in this case.

### III. CONCLUSION

We affirm the trial court's judgment.

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed this
23rd day of August, 2018.