

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0322-21

---

### SAMUEL CRAWFORD PATTERSON, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### BRAZOS COUNTY

---

**KELLER, P.J., delivered the opinion of a unanimous Court.**

The issue before us is whether the particularity requirement of the Fourth Amendment is satisfied if a warrant describes the place to be searched as a fraternity house as a whole without specifying a suspect's actual room in the house, but an incorporated affidavit provides both descriptions. We hold that the particularity requirement is satisfied if an affidavit that is incorporated into the warrant includes, somewhere, a specific description of the place that was searched. We reverse the judgment of the court of appeals.

# I. BACKGROUND

## A. Facts

In the early morning hours of August 20, 2016, police and medics responded to multiple emergency calls regarding a drug overdose at the Texas A&M Sigma Nu fraternity house. Callers said that they saw drugs and that fraternity members did not want police to get involved. Upon arrival, law enforcement discovered a fraternity brother deceased from an apparent overdose, so they began treating the fraternity house as a murder scene. Police made three warrantless protective sweeps of the fraternity house to make sure that the members were out of their rooms and in common areas, as well as to determine if anyone else had overdosed or needed medical attention. During each sweep, police saw narcotics and paraphernalia in plain view inside certain rooms and common areas. Officers informed Investigator Garrett about their findings, and during the third warrantless protective sweep, he saw contraband in Appellant's room (#216). Instead of seizing the illegal contraband, Investigator Garrett drafted a search warrant.

The search warrant identified the "suspected place" to be searched by giving a detailed description of the outside appearance of the fraternity house.[1] An affidavit was incorporated by and

---

[1] *Patterson v. State*, No. 10-19-00243-CR, 2020 WL 7257069, at *6 (Tex. App.–Waco Dec. 9, 2020) (not designated for publication) ("A multi-story, multi-wing residence building located at 550 Fraternity Row, College Station, Brazos County, Texas. The residence is known as the Sigma Nu Fraternity house and sits on the northeast corner of the Fraternity Row and Deacon Drive intersection. The exterior consists of light beige siding, and light beige colored brick. The main wing consists of a two story structure, with an open balcony with a wrought iron railing running the full length of the front of the building. There is a doorway located in the center. There are two large sized, multi-paned windows to both the right and left side of this doorway. Each window is further described as having dark brown shutters to either side. The lower level holds the main entrance, also centered in the building, with two large sized, multi-paned windows to both the right and left side of this doorway. Each window is further described as having dark brown shutters to either side. The lower level holds the main entrance, also centered in the building, with two large sized, multi-panned

(continued...)

made part of the warrant for all purposes. The affidavit described the "SUSPECTED PLACE" exactly as the warrant did. But also, in a separate place, the affidavit listed Appellant as "Said Suspected Party #22." And under "Synopsis of Investigation," the affidavit described what Investigator Garrett personally observed in Appellant's room during the third warrantless protective sweep: "Room #216 belonging to Said Suspected Party #22–coffee table: two small plastic baggies with white colored residue, white powdery substance arranged in a line."

A magistrate found probable cause and issued the search warrant. Investigator Garrett executed the warrant and seized drugs from Appellant's room, leading to Appellant being charged with two counts of unlawful possession of a controlled substance. After a hearing, the trial court denied Appellant's motion to suppress. Appellant then pled guilty and was sentenced by the trial court to two years on each count, probated for five years. Appellant appealed the trial court's denial of his suppression motion.

-----

(...continued)
windows to both the right and left side of this doorway. The front of the residence building has six, individual, brick pillars which reach from the ground to the top of the second story. These pillars are made of beige colored brick. The two center most pillars are adorned with lighting sconces which are positioned near the center of the pillar, height wise. Centered on the second level and attached to the wrought iron railing are the two large, Greek letters for Sigma and Nu, which are dark brown in color surrounded by a white outline. Directly below these letters, the numbers '550' are affixed. The main entrance into the residence building faces towards the southwest and consists of two wooden doors. which open outwards. The doors are painted maroon in color; with the right side door having a brown metal, latch style door knob with an attached electronic key pad positioned on the left side of the door. Above the door latch is a brown metal keyhole for a deadbolt style locking mechanism. The attached wing is also two storied and made up of beige colored brick. It is positioned on the northwest side of the main building. The southwest facing side of the attached wing holds four individual windows, two on each level, which consist of multi-paned windows and dark brown colored shutters to each side. Said Suspected Place also includes locations outside of the residence, such as garages, outbuildings, boxes, and other vehicles parked within the curtilage of Said Suspected Place.").

## B. Court of Appeals's Decision[2]

The court of appeals held that the warrant's description of the place to be searched violated the particularity requirement of the Fourth Amendment and that for that reason the trial court abused its discretion in denying Appellant's motion to suppress.[3] Focusing on the fact that the affidavit's description of Appellant's room did not appear under "suspected place" to be searched, the court of appeals determined that neither the search warrant nor the affidavit identified Appellant's room within the fraternity house as a place to be searched; rather, they both described the entire fraternity house and thus constituted a general warrant.[4] The court of appeals held that the trial court abused its discretion in denying Appellant's motion to suppress, found the error harmful, and reversed his conviction.[5]

## II. ANALYSIS

The Fourth Amendment[6] establishes a constitutional preference that a search be conducted

---

[2] The court of appeals first addressed the question of whether Appellant had a privacy interest in his room at the fraternity house. *Id*. at *5. The court found that a fraternity house is more like a dormitory than a single-family residence, and Appellant therefore did have a privacy interest in his room. *Id*. at *6. The issue of whether Appellant had a privacy interest in his room is not before us.

[3] *Id*. at *7.

[4] *Id*.

[5] *Id*. at *8.

[6] "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST, amend. IV.

pursuant to a warrant.[7] Typically, the warrant process involves presenting to a neutral and detached magistrate an affidavit that establishes probable cause to conduct a search.[8] Probable cause exists when, under the totality of the circumstances, there is a "fair probability" that contraband or evidence of a crime will be found at the specified location.[9] The legal concept that probable cause must relate to a specific location is known as the particularity requirement, which is satisfied if the warrant enables the officer to locate the property and distinguish it from other places in the community.[10]

The State argues that the particularity requirement was satisfied because the search warrant incorporated the affidavit for all purposes, and even though the search warrant itself did not include a description of Appellant's room, the incorporated affidavit contained within its four corners a description of Appellant's room where law enforcement observed contraband in plain view. The State further argues that the court of appeals read the affidavit in a "hyper-technical" manner rather than a common-sense manner, focusing on the fact that the description of Appellant's room was contained in the body of the affidavit rather than in the first paragraph of the warrant and the affidavit's first page describing the "suspected place." We agree with the State.

When a search warrant affidavit is incorporated into a search warrant, it becomes a part of, and can be used to aid the description in, the search warrant.[11] Although a reviewing court must look

---

[7] *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Jones v. State*, 364 S.W.3d 854 (Tex. Crim. App. 2012).

[8] *Jones*, 364 S.W.3d at 854.

[9] *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007).

[10] *Bonds v. State*, 403 S.W.3d 867, 875 (Tex. Crim. App. 2013).

[11] *Green v. State*, 799 S.W.2d 756, 760 (Tex. Crim. App. 1990) (citing *Phenix v. State*, 488
(continued...)

only to the four corners of the supporting affidavit, the reviewing court should regard the magistrate's decision to issue the warrant with great deference.[12] After reviewing the supporting affidavit in "a commonsensical and realistic manner," a reviewing court must uphold the magistrate's decision as long as the magistrate had a substantial basis for concluding that probable cause existed.[13]

The particularity requirement is satisfied when an incorporated affidavit is "sufficiently specific to apprise the officers of where they were to conduct the searches."[14] In *Affatato*, officers obtained a search warrant that authorized a search of the suspect's apartment, outbuildings, and curtilage, but it did not specifically describe the suspect's garage, which was detached and separated from the apartment by the parking lot and sidewalk.[15] Nevertheless, police searched the suspect's garage because the affidavit–which was incorporated into the warrant–described the suspect's address, apartment number, and garage number, as well as a statement from the suspect's girlfriend that the suspect would return from the specified garage with drugs.[16] The court of appeals held that the affidavit's language controlled over the warrant's language because affidavits are generally more

---

(...continued)
S.W.2d 759 (Tex. Crim. App. 1972) (holding that where a search warrant incorporates the supporting affidavit and the affidavit describes the place to be searched with particularity, this is sufficient to make the description of the place to be searched part of the warrant)).

[12] *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011).

[13] *Id*. *See also Gates*, 462 U.S. at 238.

[14] *Affatato v. State*, 169 S.W.3d 313, 316 (Tex. App.–Austin 2005, no pet.) (*see also Palmer v. State*, 614 S.W.2d 831, 833 (Tex. Crim. App. 1981)).

[15] *Affatato*, 169 S.W.3d at 316.

[16] *Id*. at 317.

specific and precise in reciting the information that an affiant knows.[17] Due to the detailed information regarding the garage in the incorporated affidavit, the court of appeals held that the search was permissible.[18]

The purpose of an affidavit that is incorporated into a search warrant is to show probable cause to search a particular place.[19] In *Saldivar*, police obtained a search warrant to search a large rural dwelling located on over a thousand acres.[20] Although the warrant particularly described the suspect's house, it did not list the house under its section titled "to be searched;" rather, "to be searched" listed "all other out buildings, structures, and vehicles located on this property."[21] But the incorporated affidavit did not particularly describe any other structure besides the suspect's house. Instead, it listed suspicious observations about people entering and leaving the suspect's house with firearms and flammable liquids and other activities that were, in the affiant's experience, characteristic of operating a methamphetamine laboratory inside.[22] The court of appeals held that the incorporated affidavit set out facts that established probable cause to search the suspect's house and that the search was valid.[23]

When read in a common-sense manner, the affidavit, and therefore the warrant, described

---

[17] *Id.*

[18] *Id.* at 318.

[19] *State v. Saldivar*, 798 S.W.2d 872, 874 (Tex. App.–Austin 1990, pet. ref'd).

[20] *Id.* at 873.

[21] *Id.*

[22] *Id.* at 874.

[23] *Id.*

Appellant's room with sufficient particularity to establish probable cause to search. Although the search warrant and the affidavit both described the entire fraternity house in the section titled "suspected place," the incorporated affidavit proceeded to identify Appellant as "Said Suspected Party #22" and listed the contraband that officers saw in Appellant's particular room. This portion of the incorporated affidavit established probable cause and satisfied the particularity requirement because it was sufficiently specific to inform the officers of where they were to search and what they should expect to find. To invalidate this search by focusing solely on the section of the warrant and incorporated affidavit titled "suspected place" would constitute reading the warrant in a "hyper-technical" manner, rather than the common-sense approach that the law requires.[24]

### III. CONCLUSION

We reverse the court of appeals's judgment and remand the case to that court to address Appellant's remaining complaints.

DELIVERED: March 30, 2022

Publish

---

[24] *McLain*, 337 S.W.3d at 271.