**REVERSE and REMAND; and Opinion Filed August 6, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00975-CR

### THE STATE OF TEXAS, Appellant

### V.

### JOHN FLANAGAN, Appellee

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F12-23858**

## MEMORANDUM OPINION
Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

Appellee John Flanagan[1] is charged by indictment with possession of methamphetamine

in an amount of less than one gram. On appeal, the State of Texas challenges the trial court's

order granting appellee's pretrial motion to suppress evidence. Because the issues are settled, we

issue this memorandum opinion. TEX. R. APP. P. 47.4. We reverse and remand.

### BACKGROUND

Police executed a warrant to search an apartment occupied by appellee and Amber

Lashbrook. Appellee and Lashbrook filed separate pretrial motions to suppress evidence seized

---

[1] The indictment stated appellee's name as "John L. Flanagan Jr."

at the apartment.[2]  The trial court held a consolidated hearing and granted both defendants' motions.[3]

**The Warrant**

The warrant at issue in the hearing on the defendants' motions to suppress authorized the search of an apartment located at 3208 W. Buckingham Rd. #D in the City of Garland, Dallas County, Texas for "[m]arihuana[,] EVIDENCE SUPPORTING THE SALE OF MARIHUANA AND PROCEEDS FROM NARCOTICS SALES."

**The Probable-Cause Affidavit**

In support of the warrant, M. Taylor, an investigator in the narcotics unit of the Garland police department, stated that he had probable cause to believe that appellee and Lashbrook "do at this time unlawfully possess an illegal controlled substance[,]" marijuana, and evidence supporting the sale of marijuana and proceeds from narcotics sales.  Taylor stated,

> On Monday 06/18/2012, Narcotics Investigator M. Taylor #6751, herein referred to as the Affiant, responded to 3208 W Buckingham Rd # D (The Richland Apartments located within the City of Garland, Dallas County, Texas) in reference to an assigned case[.]  The aforementioned case was created in response to Child Protective Services ("CPS") case # 42270812.  CPS case # 42270812 alleged illegal drug use at 3208 W Buckingham Rd. # D. and listed the residents of this location as the subjects listed in paragraph # 3 above, John Flanagan and Amber Lashbrook.

Taylor stated that, once he arrived at the apartment, he observed that the front door had been damaged so that it could no longer be properly secured.  Taylor knocked and appellee opened the door.  Taylor stated that he "recognized [appellee] through police files" and that

---

[2] The trial court conducted an initial hearing on Lashbrook's motion to suppress, at which appellee testified as a witness.  During appellee's testimony, the trial court became aware that he "was possibly subject to an indictment for the same offense" and, as a result, stopped the initial hearing and appointed counsel for appellee.  The court subsequently held a consolidated hearing on the motions to suppress filed by Lashbrook and appellee and granted both motions.

Appellee's motion to suppress evidence stated numerous grounds, but appellee and Lashbrook confined their argument at the consolidated hearing on their motions to suppress to whether, based on the information within the four corners of the search warrant affidavit, there was probable cause to issue the warrant.  And the trial court granted their motions based on that issue.

[3] The State appealed the trial court's ruling in both cases and we decide this appeal at the same time we decide *State v. Lashbrook*, case number 05-14-00974-CR.

appellee "was listed as the resident in CPS case # 42270812[.]" Taylor asked appellee if Taylor and his partner, Investigator S. Ehrman, "could come inside and speak to Flanagan about a current investigation." Appellee said yes and Taylor and Ehrman entered the apartment. Once inside, Taylor confirmed that appellee and Lashbrook lived there and told appellee that Taylor "was at the location in reference to a CPS case." Lashbrook, who Officer Taylor said was observed in a rear bedroom, asked the officers why they were at the apartment. Taylor told Lashbrook that he was at the apartment "in reference to the CPS case[.]" Lashbook then volunteered that the apartment was "clean" and that the officers "could look through it." Taylor did not search the apartment, but walked around to get an overall view of the living conditions.

Taylor said that, when he walked through the master bedroom, he "observed a green plant stem" that he "recognized through his experience as a Narcotics investigator as a Marihuana stem." Taylor seized the stem and asked appellee and Lashbrook for consent to search the apartment. Both denied consent. Taylor "immediately secured" the apartment in order to prepare the application for a warrant.

Taylor said that he used a department issued field test kit, "Duquenois-Levine Reagent #908[,]" to perform a field test on the "seized Marihuana stem." The field test was positive, "confirming that the stem was Marihuana."

Taylor concluded that it was his "experience as a police officer and narcotics investigator that persons who use and sell **Marihuana** do possess quantities of packaged **Marihuana** secreted inside their residence and out buildings."

–3–

**The Hearing on the Motions to Suppress**

During the consolidated hearing on the motions to suppress, counsel for appellee[4] argued that "the only probable cause given is they found a marijuana stem" and "that alone is not sufficient for a magistrate to issue a search warrant of a home." Appellee's counsel argued that there was no evidence in the search warrant that appellee and Lashbrook were involved in the sale of drugs, no evidence of equipment and money associated with the sale of drugs, and no evidence that the defendants were under the influence of marijuana or that there was any immediate prior activity of marijuana use at the location. He argued that "[a]ll we have here [was] a stem," and, as a result, "within the four corners of the affidavit," there was not enough evidence to establish probable cause.

In response, the State argued that the court should follow constitutional principles requiring it to defer to the magistrate's determination of probable cause and that the stem was not the only basis for probable cause. The State argued that the affidavit stated that the detective went to the residence in response to a CPS case concerning suspected drug use by appellee and Lashbrook. The State contended that, once the detective saw evidence of drug use in the house, there was probable cause for a warrant and, as a result, the warrant on its face was sufficient. The State also contended that the CPS report was "referenced in the affidavit" and it was "in the warrant, so [it was] evidence before the Court."

The defendants' counsel argued that the CPS report was not the basis of the affidavit nor was it in evidence. When asked by the trial court if the CPS report was presented to the magistrate, the prosecutor responded that he did not know—to which the court replied, "Doesn't count." The prosecutor argued that the report did not have to be presented to the magistrate.

---

[4] Lashbook's attorney "accede[d] to" appellee's counsel arguing the issue of the sufficiency of the affidavit to support the search warrant and "urge[d] this with him."

And he argued that detectives and officers often use anonymous tips and information people tell them. He said this information was not anonymous—but rather the CPS communicated the information and the officer listed the CPS case report number and location address, and "specifically allege[d] drug use was the basis of the CPS investigation."

The court asked what "distinguishing characteristic" would enable an experienced narcotics investigator to determine that a green plant stem was marijuana as opposed to another type of green plant stem. The State replied that the detective testified that he could tell that the stem was a marijuana stem based on his training and experience.

The court granted the motions to suppress and the State appealed.

### STANDARD OF REVIEW AND APPLICABLE LAW

The Fourth Amendment establishes a constitutional preference that a search be conducted pursuant to a warrant. *Jones v. State*, 364 S.W.3d 854, 856–57 (Tex. Crim. App. 2012) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)); *see* U.S. CONST. amend. IV. Under Texas law, no search warrant may issue without a sworn affidavit that sets forth facts sufficient to establish probable cause. *See* TEX. CODE CRIM. PROC. ANN. art. 1.06 (West 2005), art. 18.01(b), (c) (West Supp. 2014); *see also* TEX. CONST. art. 1, § 9. Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). Probable cause is a "flexible and non-demanding standard." *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011).

We normally review a trial court's ruling on a motion to suppress by using a bifurcated standard of review, where we give almost total deference to the historical facts found by the trial court and review de novo the trial court's application of the law. *Id.* at 271. But when the trial court is determining probable cause to support the issuance of a search warrant, there are no

–5–

credibility determinations. *Id.* Rather the trial court is constrained to the four corners of the affidavit. *Id.* Because of the constitutional preference for searches to be conducted pursuant to a warrant, we apply a highly deferential standard of review to a magistrate's probable-cause determination. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013); *McLain*, 337 S.W.3d at 271. Under this highly deferential standard, we interpret the supporting affidavit in a commonsensical and realistic manner, and we defer to all reasonable inferences that the magistrate could have made. *McLain*, 337 S.W.3d at 271; *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007); *see Bonds*, 403 S.W.3d at 873. We consider the totality of the circumstances and determine whether there are sufficient facts stated within the four corners of the affidavit, coupled with inferences from those facts, to establish a fair probability that evidence of a particular crime would be found at a given location. *See Rodriguez*, 232 S.W.3d at 62; *see also Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable-cause determination. *Bonds*, 403 S.W.3d at 873; *McLain*, 337 S.W.3d at 271 ("When in doubt, we defer to all reasonable inferences that the magistrate could have made."); *see also Gates*, 462 U.S. at 238–39. Although the reviewing court is not a "rubber stamp," "the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review." *Jones*, 364 S.W.3d at 857 (quoting *Flores*, 319 S.W.3d at 702).

### ARGUMENTS OF THE PARTIES

The State argues that the trial court erred by granting the motion to suppress because the search warrant affidavit contained sufficient facts to provide the issuing magistrate with a substantial basis for concluding that there was a fair probability that marijuana or evidence related to illegal drugs would be present at the target address and that a search of that location

would yield evidence related to illegal drugs. The State argues that the affiant's discovery of a stem that he confirmed to be a marijuana stem in the target residence was "sufficient in and of itself" to establish probable cause. The State also argues that (1) the trial court's expressed doubts concerning how a trained narcotics officer could identify that a green stem was a marijuana stem and (2) its comments indicating that the court did not consider "the existence of the CPS report" reflect that the trial court did not give proper deference to the magistrate's determinations and did not consider all facts in the affidavit. The State contends that the magistrate was entitled to find affiant Taylor's statements concerning his discovery and recognition of a marijuana stem and his confirmation that the stem was marijuana through a field test to be credible. And the State contends that the magistrate was entitled to credit the information that CPS provided affiant Taylor, and—if the "basic factual assertions" communicated to Taylor about the CPS report were conclusory—the magistrate was entitled to give conclusory statements some weight.

Appellee argues that the trial court properly granted the motion to suppress because the assertions in the search warrant affidavit were global and conclusory and, when viewed as a whole, did not present proof of probable cause to justify issuance of a search warrant. Specifically, appellee argues that "really only one 'fact'" stated in the affidavit would lead to a suspicion that a crime had been committed or an instrumentality of a crime would be located on the premises: the officer's recognition of a stem as a marijuana stem and his confirmation by a field test that the stem was marijuana. Citing *Taylor v. State*, 505 S.W.2d 927 (Tex. Crim. App. 1974) and *Cooper v. State*, 648 S.W.2d 315 (Tex. Crim. App. 1983), appellee argues that "possession of a marijuana stem is not a crime nor is it an instrumentality of a crime" because it was not a usable quantity of marijuana and, as a result, the affidavit did not provide the magistrate with sufficient information to justify the issuance of the warrant.

In response, the State argues that finding the marijuana stem was not the "sole fact" stated in the affidavit establishing probable cause. The State also contends that the search warrant affidavit did not have to establish appellee's actual possession of a usable quantity of marijuana to establish probable cause and that the case authority that appellee cites is distinguishable.

## ANALYSIS

Our focus is whether, under the totality of the circumstances, there were sufficient facts stated within the four corners of the probable-cause affidavit, coupled with inferences from those facts, to establish a fair probability that evidence of a particular crime would be found at the apartment. *Rodriguez*, 232 S.W.3d at 62. We evaluate what facts a magistrate could directly find from and reasonably infer from the affidavit. *See Flores*, 319 S.W.3d at 702–03.

From the four corners of Taylor's affidavit, the magistrate could directly find (1) Taylor was an investigator in the narcotics unit of the Garland police department; (2) on June 18, 2012, Taylor responded to 3208 W. Buckingham Rd. #D in reference to an assigned case; (3) the case was created in response to CPS case # 42270812, which "alleged illegal drug use" at that address and listed appellee and Lashbrook as the subjects of the CPS case; (4) once at the apartment, Taylor knocked on a damaged door, and a person whom he recognized through police files as appellee opened the door; (5) Taylor asked appellee if Taylor and his partner Ehrman could come inside and speak to appellee "about a current investigation" and appellee said "yes" and Taylor and Ehrman entered the apartment; (6) Taylor confirmed that appellee and Lashbrook lived there and told appellee that Taylor was there "in reference to a CPS case"; (7) Taylor saw Lashbrook in a rear bedroom, and in answer to her questions, Taylor told her that he was at the apartment "in reference to the CPS case" and she stated that the apartment was "clean" and that the officers could look through it; (8) Taylor did not search the apartment but walked through it

"getting an overall view of living conditions inside"; (9) in the master bedroom, Taylor "observed a green plant stem recognized through his experience as a Narcotics investigator as a Marihuana stem"; (10) Taylor seized the stem and asked appellee and Lashbrook for consent to search the residence, they denied consent, and Taylor then "immediately secured" the location to prepare the application for a warrant; and (11) Taylor performed a field test on the stem, which returned a positive result and confirmed that the stem was marijuana. In light of these facts, the magistrate could also reasonably infer that Taylor's experience as a narcotics investigator enabled him to recognize the stem as a marijuana stem. *See Davis v. State*, 202 S.W.3d 149, 156 (Tex. Crim. App. 2006) (concluding that magistrate could reasonably infer that officer was trained, commissioned police officer who, based on past experience, could identify odor generated by cooking methamphetamine).

We agree with the State that the facts stated in the affidavit concerning the CPS case were among the facts the magistrate could consider as supporting probable cause.[5] *See United States v. Ventresca*, 380 U.S. 102, 110–11 (1965) (stating that, in contrast to tips from "unreliable anonymous informers," the "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant"); *Moreno v. State*, 415 S.W.3d 284, 288 (Tex. Crim. App. 2013) (citing *Ventresca* and noting that law enforcement in Clovis, New Mexico was "a reliable source" of information regarding narcotics distribution to police officers in Lubbock, Texas).

Additionally, appellee's argument that, in order to establish probable cause, it was necessary for the stem that Taylor seized to be a usable quantity of marijuana and a crime to possess is not supported by authority. As the State notes, the cases that appellee cites as

---

[5] Appellee contends that the affidavit did not provide details of the CPS case, including the name of the informant or case worker who observed the illegal drug use, whether the informant or case worker was reliable, and the date and time of the alleged illegal drug use, but appellee does not provide authority for the proposition that the details of the CPS case that he mentions must be included in the affidavit.

authority, *Taylor*, 505 S.W.2d at 929, and *Cooper*, 648 S.W.2d at 315–16, concerned the sufficiency of the evidence to support a conviction, which is distinguishable from the standard here: whether there was a fair probability that contraband or evidence of a crime would be found at the apartment when the warrant was issued.

Appellee also cites authority for the propositions that an affidavit is conclusory and inadequate to establish probable cause when the affiant alleges that he relied on his training and experience to conclude that his observations were consistent with possible narcotics activity without a more detailed recitation, *see Gates*, 462 U.S. at 239; *Nathanson v. United States*, 290 U.S. 41, 47 (1933), and that the affiant's "mere affirmation" of belief or suspicion of others is inadequate, *see Duarte*, 389 S.W.3d at 354. But the affidavit here did not merely state that Taylor was relying on his training and experience or the beliefs or suspicions of others. Instead, the affidavit provided a detailed recitation of the facts and circumstances that he witnessed.

Consequently, under the totality-of-the-circumstances test and the stated facts and giving due regard to all reasonable inferences that can be drawn from the stated facts, we conclude that the magistrate had a substantial basis for concluding that probable cause existed—specifically that there was at least a fair probability that marijuana would be found at the apartment. As a result, we conclude that the trial court erred when it granted appellee's motion to suppress. We sustain the State's sole issue on appeal.

## CONCLUSION

We reverse the trial court's order granting appellee's motion to suppress and remand this case for further proceedings consistent with this opinion.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)

140975F.U05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-14-00975-CR     V.

JOHN FLANAGAN, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas

Trial Court Cause No. F12-23858.

Opinion delivered by Justice Lang-Miers, Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the order of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings.

Judgment entered this 6th day of August, 2015.